679 S.E.2d 654

**Michael BLANKENSHIP and Misty Blankenship, Plaintiffs Below, Appellees,**

v.

**The CITY OF CHARLESTON and Boston Culinary Group, Inc., d/b/a Distinctive Gourmet, Defendants/Third–Party Plaintiffs Below, Appellees,**

v.

**Lakewood Swim Club, Inc., Third Party Defendant/Fourth–Party Plaintiff Below, Appellant,**

v.

**Evanston Insurance Company, Fourth–Party Defendant Below, Appellee.**

No. 34399.

Supreme Court of Appeals of West Virginia.

Submitted April 8, 2009.

Decided June 18, 2009.

C. Benjamin Salango, Preston & Salango, PLLC, Charleston, WV, for the Appellant.

John F. McCuskey, Heather B. Osborn, Shuman, McCuskey & Slicer, PLLC, Charleston, WV, for the Appellee, Evanston Insurance Company.

PER CURIAM.

This is an appeal of fourth-party plaintiff below, Lakewood Swim Club, Inc. (hereinafter "Lakewood"), from the December 11, 2007, order of the Circuit Court of Kanawha County granting summary judgment in favor of fourth-party defendant below, Evanston Insurance Co. (hereinafter "Evanston"), in a declaratory judgment action arising in a negligence case.[1] The issues decided by the lower court involve whether Evanston had a duty to indemnify or a duty to defend under the terms of the commercial general liability insurance policy Lakewood had through Evanston. Having considered the arguments of the parties, the record accompanying the appeal and the controlling law, we affirm the decision of the lower court.

### I. Factual and Procedural Background

The original tort claim from which this appeal arose was filed by Michael and Misty Blankenship after Mr. Blankenship was injured at a concert at the Charleston Civic

---

1. The original underlying tort claim was brought by Michael and Misty Blankenship against the City of Charleston and Boston Culinary Group, Inc., d/b/a Distinctive Gourmet. None of the original parties are directly involved in this appeal.

Center when he slipped and fell near a concession stand where some beer had been spilled. The defendants initially named in the complaint were the City of Charleston, as owner and operator of the Civic Center, and Boston Culinary Group, d/b/a Distinctive Gourmet (hereinafter "Boston Culinary"), as the manager of the beverage service at the Civic Center. Boston Culinary joined Lakewood as a third-party defendant on the basis that Lakewood's members were actually operating the concession when the accident occurred.[2] In its complaint, Boston Culinary maintained that Lakewood operated the concession pursuant to a contract agreeing to indemnify and hold harmless Boston Culinary for any injury that may occur from negligent operation of the concession by Lakewood.[3]

Upon being named a party to the suit, Lakewood submitted a claim to Evanston for coverage under a commercial general liability insurance policy it had with the company. Finding that the claim was outside the terms of the policy in effect at the time of the accident, Evanston informed Lakewood that it would not defend or indemnify Lakewood with regard to the claim. Lakewood then filed a fourth-party complaint against Evanston, seeking "a declaration by the Court that Evanston Insurance Company Policy No. CP470100909[4] provides coverage for the incident at issue . . . ." Following discovery related to this issue, Lakewood filed a motion for summary judgment as to its claim against Evanston, to which Evanston filed a response with a cross-motion for summary judgment.[5] After holding a hearing on the motions on December 6, 2007, the trial court granted summary judgment in favor of Evanston by order entered December 11, 2007. The order relates that summary judgment was granted as a matter of law for the following reasons:

12. Plaintiff's alleged bodily injury did not arise out of the designated project (PRIVATE SWIM CLUB), as required by the clear, plain and unambiguous language of the policy issued to Lakewood Swim Club by Evanston Insurance Company and, therefore, the Evanston Insurance Company policy does not provide **coverage** for the claims asserted against the swim club in this action.

13. The Court hereby finds that Evanston Insurance Company has no **duty to indemnify** Lakewood Swim Club for the claims arising out of plaintiff's alleged bodily injury, based on the clear, plain and unambiguous language of the Evanston Insurance Company policy.

14. The Court further finds that Evanston Insurance Company has no **duty to defend** Lakewood Swim Club for the claims arising out of plaintiff's alleged bodily injury, based on the clear, plain and unambiguous language of the Evanston Insurance policy.

(Emphasis added).

It is from this order that Lakewood appealed and for which appellate review was granted by this Court by order of October 9, 2008.

## II. Standard of Review

This case is before us from a trial court's summary judgment order. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Inasmuch as the summary judgment was entered with regard to a declaratory judgment action, we further note that "[a] circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. Pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995). As we explained in *Cox*, "because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate reso-

2. The Blankenships later amended their complaint naming Lakewood as a defendant and asserting that Lakewood negligently operated the concession stand.

3. There remains an unresolved dispute before the lower court as to whether Lakewood was a party to the concession operation contract with Boston Culinary.

4. Relevant portions of this policy are set forth *infra*, within the Discussion section of this opinion.

5. The record does not reflect that Lakewood filed a written response to Evanston's cross-motion for summary judgment.

lution in a declaratory judgment action is reviewed *de novo.*" *Id.* at 612, 466 S.E.2d at 463.

Our review of the specific subject raised on this appeal is likewise plenary. Lakewood is seeking review of the trial court's ruling that it was not entitled to indemnification or a defense under the Evanston policy. "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. Pt. 1, *Tennant v. Smallwood,* 211 W.Va. 703, 568 S.E.2d 10 (2002). As "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination ..., like a lower court's grant of summary judgment, [it] shall be reviewed *de novo* on appeal." Syl. Pt. 2, *Riffe v. Home Finders Associates, Inc.,* 205 W.Va. 216, 517 S.E.2d 313 (1999).

### III.  Discussion

Lakewood raises two assignments of error regarding the lower court's determination concerning the insurance policy, one directed to Evanston's duty to defend and the other to the company's duty to indemnify.[6] In either instance, the duty turns on whether coverage is extended under the insurance policy at issue for the type of activity the Lakewood members engaged in on behalf of the club and which gave rise to the bodily injury claim. Consequently, we begin our review with an examination of the pertinent provisions of the insurance policy and relevant endorsements.

The general provisions of Lakewood's policy with Evanston reads:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy care-

fully to determine rights, duties, and what is and is not covered.

\* \* \* \* \*

SECTION I—COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"... to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" ... to which this insurance does not apply.... [7]

    b.  This insurance applies to "bodily injury" ... only if:

    (1) The "bodily injury" ... is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" ... occurs during the policy period.

The **coverage territory** as defined in the general policy is:

a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

b.  International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c.  All parts of the world [if stated conditions are met].

Two endorsements to the general insurance policy which are applicable to our re-

---

**6.**  An insurer's duty to defend is not synonymous with an insurer's duty to indemnify. We recognized the distinction in *Aetna Casualty & Surety Company v. Pitrolo,* 176 W.Va. 190, 194, 342 S.E.2d 156, 160 (1986), as follows:

As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.... [I]t is generally recognized that the duty to

defend an insured may be broader than the obligation to pay under a particular policy. This ordinarily arises by virtue of language in the ordinary liability policy that obligates the insurer to defend even though the suit is groundless, false, or fraudulent.

**7.**  Item 14 in the Combination General Endorsement to the policy further states: "Where there is no coverage under this policy, there is no duty to defend."

view are: (1) M/E–217, entitled "Specified/Designated Premises/Project Limitation" (hereinafter "endorsement M/E–217"); and (2) M/E–011, entitled "Additional Insured—Club Members Endorsement" (hereinafter "endorsement M/E–011").

Appearing on the face of endorsement M/E–217 is the statement **"THIS ENDORSEMENT CHANGES THE POLICY,"** after which the following appears:

**Schedule**

**Premises:**

LAKEWOOD DR.

ST. ALBANS WV 25177

**Project:**

PRIVATE SWIM CLUB

(Complete above if information different than that shown in the Declarations[8])

This insurance applies only to "bodily injury", "property damage", "personal injury", "advertising injury" and medical expenses arising out of:

    1. The ownership, maintenance or use of the premises shown in the Schedule (or Declarations); **or**

    2. The project shown in the Schedule (or Declarations).

(Emphasis added.)

The same prefatory statement of **"THIS ENDORSEMENT CHANGES THE POLICY"** appears on endorsement M/E–011. The body of this endorsement then states:

WHO IS AN INSURED (Section II) of the Commercial General Liability coverage part is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf.

Lakewood maintains that the policy does not restrict coverage to bodily injury that occurs on Lakewood's premises. In support of this position, Lakewood reasons that the general policy provisions provide coverage for bodily injuries occurring in the coverage territory. Lakewood concedes that some restriction is placed on the broad definition of coverage territory in the general policy by the terms of endorsement M/E–217 as the Schedule it contains identifies the premises. However, Lakewood maintains that although endorsement M/E–217 itemizes the "Project" in the Schedule as "PRIVATE SWIM CLUB," it neither defines nor restricts the definition of the term "project." Lakewood asserts that affidavits of two Lakewood members which were supplied to the trial court establish that operation of the concession stand by the club on the night of the incident was a fund-raising project of the private swim club. Because running the concession was a fund-raising project of the private swim club, Lakewood postulates that the Blankenship claim falls within the coverage of the policy due to the provisions of endorsement M/E–011. According to Lakewood, the terms of endorsement M/E–011 extends coverage to these type of member activities wherever they occur by expressly providing that "as an insured any of your members [are covered], but only with respect to their liability for your activities or activities they perform on your behalf."

Evanston contends that the lower court's ruling is correct because endorsement M/E–217, not endorsement M/E–011, controls the issue of coverage. Evanston first maintains that endorsement M/E–011 is irrelevant because the Blankenship claim is against Lakewood and not its members. Evanston then proposes that even if the claim had been made against Lakewood's members individually, coverage would still not be available under the express terms of endorsement

---

**8.** The common policy declarations do not address a premises location (it does list the mailing address of the insured as 2088 LAKEWOOD DR., ST ALBANS, WV 25177), nor does it identify a project (it does, however, list a business description as "PRIVATE SWIM CLUB." The "Supplemental Declarations" portion of the policy in the record contains the following statement:

    Location of all premises you own, rent or occupy: LAKEWOOD RD., ST ALBANS WV 25177

It also contains a listing of forms and endorsements made part of the policy which includes both endorsement M/E–011 and endorsement M/E–217. The final statement on the Supplemental Declarations page states:

    THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

M/E–217 which requires either that the bodily injury arises from the ownership, maintenance or use of the private swim club premises or that the injury results from the project identified in this endorsement as "PRIVATE SWIM CLUB."

It is well-established that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. Pt. 1, *Christopher v. U.S. Life Ins. Co.*, 145 W.Va. 707, 116 S.E.2d 864 (1960). The lower court's ultimate conclusion as reflected in the summary judgment order is that the alleged bodily injury did not arise out of the designated project of "PRIVATE SWIM CLUB" as required by the clear, plain and unambiguous language of the policy. We agree.

Counsel for Lakewood during oral argument stressed the significance of the expansive definition of coverage territory in the general policy. However, an equally important provision of the general policy is the cautionary introductory statement that "[v]arious provisions in this policy restrict coverage [and one has to] [r]ead the entire policy carefully to determine rights, duties and what is not covered." There is no dispute that the endorsements are part of the policy, and endorsement M/E–217 clearly qualifies the types of bodily injury .claims covered under the policy through its statement that "[t]his *insurance applies only* to 'bodily injury' . . . arising out of . . . ownership, maintenance or use of the [Lakewood Dr., St. Albans, W.Va.] premises . . . **or** *[t]he* project shown in the Schedule [as PRIVATE SWIM CLUB]." (Emphasis added.) Use of the disjunctive **"or"** supports Lakewood's position that the injury does not have to occur on the private swim club premises. Nevertheless, we do not find that the language of endorsement M/E–217 contemplates that *any* undertaking of the club members is a project for which coverage under the policy extends. Endorsement M/E–217 defines *the* project applicable to the policy as "PRIVATE SWIM CLUB." Although endorsement M/E–011 provides that activities of members performed on behalf of the club are covered

under the policy, the activities still must conform with *the* project defined in endorsement M/E–217. This is true because all of these endorsement provisions, declarations and standard contract provisions comprise the commercial general liability insurance policy Lakewood had with Evanston as clearly indicated on the Supplemental Declarations page of the contract.

It is well-established that the "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds* by *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). Applying this standard to the facts at hand, we conclude, as did the lower court, that selling beer at a concession stand at a concert open to the public in a location other than the private swim club premises is an activity beyond the ordinary meaning or purpose of a project defined as a private swim club. Where an insurance policy is clear and unambiguous, "[t]he court is bound to adhere to the insurance contract as the authentic expression of the intention of the parties, and it must be enforced as made where its language is plain and certain." *Keffer v. Prudential Insurance Company of America*, 153 W.Va. 813, 816, 172 S.E.2d 714, 716 (1970). "[T]he court cannot make a new contract for the parties where they themselves have employed express and unambiguous words." *Id.* Consequently, it is unnecessary to consider any argument raised regarding the reasonable expectation of coverage based on extrinsic evidence of intent of the parties, such as the application for insurance. As we explained in *National Mutual Insurance Co. v. McMahon & Sons, Inc.*, "[i]n West Virginia, the doctrine of reasonable expectations is limited to those instances . . . in which the policy language is ambiguous." 177 W.Va. at 742, 356 S.E.2d at 496.

Because the policy did not extend insurance coverage to the type of project giving rise to the injury in question, the lower court was correct in finding that Evanston had no duty to defend or duty to indemnify the Blankenship claim against Lakewood. Ac-

cordingly, we affirm the decision of the lower court.

## IV. Conclusion

Based upon the foregoing reasons, we affirm the December 11, 2007, summary judgment order of the Circuit Court of Kanawha County.

Affirmed.