736 S.E.2d 52

**NEW HAMPSHIRE INSURANCE COMPANY, Defendant Below, Petitioner,**

v.

**RRK, INC., d/b/a Showboat Marina, Plaintiff Below, Respondent.**

**No. 11–1099.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 2012.

Decided Nov. 9, 2012.

Don C.A. Parker, Esq., Neva G. Lusk, Esq., Glen A. Murphy, Esq., Spilman Thomas & Battle, PLLC, Charleston, WV, David M. Spotts, PHV, Proctor of Admiralty, Ashtabula, OH, for Petitioner.

L. David Duffield, Esq., Chad S. Lovejoy, Esq., Thomas P. Boggs, Esq., Duffield, Lovejoy & Stemple, PLLC, Huntington, WV, for Respondent.

Jill Cranston Rice, Esq., Mychal Sommer Shulz, Esq., Dinsmore & Shohl, LLP, for Amicus Curiae, West Virginia Insurance Federation.

PER CURIAM:

The petitioner, New Hampshire Insurance Company ("New Hampshire"), appeals the June 22, 2011, order of the Circuit Court of Cabell County granting partial summary judgment in favor of the respondent, RRK, Inc. ("RRK"), finding that under the commercial marine property insurance policy issued by New Hampshire, RRK's barge and the barge's contents are covered property under the policy and that a wear-and-tear exclusion in the policy is invalid. New Hampshire contends that the circuit court's order wrongfully reforms the subject policy and that it is against public policy. RRK responds that coverage exists pursuant to the policy under the doctrine of reasonable expectations. RRK also asserts error regarding the court's finding that RRK was mailed and received a renewal policy.

After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of New Hampshire and RRK, we find that the circuit court correctly found that the barge and its contents are covered property under the policy. We also find that the circuit court was correct in finding that there is no question of fact regarding whether the renewal policy was mailed to and received by RRK. However, we find that the circuit court erred by granting partial summary judgment in favor of RRK because there is a question of fact as to whether, under the doctrine of reasonable expectations, the wear-and-tear exclusion present in the policy mailed to RRK is part of the insurance contract. We therefore affirm, in part, and reverse, in part, the circuit court's June 22, 2011, order, and we remand this case for proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2007, Rudy Lee and Kelly Lee purchased a floating barge and two strings of docks situated on the banks of the Ohio River in Huntington, West Virginia. The barge, which was permanently moored, contributed to the support of a restaurant, marina, and apartments. The Lees formed RRK which did business as Showboat Marina.

At about the same time the property was purchased, RRK sought insurance coverage for the property from a local insurance agent, Insurance Systems, Inc. ("Insurance Systems"). Insurance Systems then solicited an application for insurance and dealt directly with an Ohio insurance agency, Norman Spencer Agency, Inc. ("Norman Spencer"). Norman Spencer, in turn, dealt directly with Maritime General Agency, Inc. ("Maritime"). Maritime performed the underwriting services for the issuing insurer, the petitioner in this case, New Hampshire.

RRK dealt solely with Insurance Systems. During negotiations regarding the coverage sought, RRK requested that Insurance Systems provide it with a copy of the coverage forms of the proposed policy. In response, on September 20, 2007, Insurance Systems sent via facsimile a seventeen page document ("17–page fax") addressed to Rudy Lee which stated, "Per our phone conversation of this morning, attached you will find the coverage forms you requested." It was the understanding of RRK and Insurance Systems that any policy issued would cover the barge and its contents and the two docks.

Subsequent to receiving and reviewing the 17–page fax, Rudy Lee completed the application to purchase insurance coverage from New Hampshire and provided payment. The policy was set to be effective from September 28, 2007, to September 28, 2008. Several weeks after purchasing insurance coverage, RRK received in the mail a copy of its insurance policy from Insurance Systems. Neither of the Lees read the mailed copy.

The content of the mailed policy differed from the 17–page fax. Notably, at the top of the first substantive page of the mailed policy, language was included in boldface and capital 12–point font excluding coverage of property damaged by "wear, tear, and/or gradual deterioration." While the 17–page fax did include exclusions, it did not contain a wear-and-tear exclusion. The 17–page fax also did not list the property to be covered by the policy: the two docks, the barge, and its contents. Finally, the page of the policy listing property covered showed coverage of the two docks, but it did not list the barge and its contents.

In April of 2008, Insurance Systems realized that New Hampshire had failed to list the barge as covered property under the insurance policy. In an e-mail dated April 28, 2008, an Insurance Systems agent informed New Hampshire of the omission and requested that the barge and its contents be added to the policy.

In September of 2008, Rudy Lee and an Insurance Systems agent met to discuss property insurance coverage. It was discussed and agreed upon at the meeting that the insurance coverage should include coverage of the barge and its contents. The agent assured Mr. Lee that he would ensure that

the barge and contents were covered under the policy.

The same application to purchase the initial insurance policy was used again to purchase insurance coverage for the period of time between September 28, 2008, and September 28, 2009. The new policy was mailed to RRK, and again, no person with RRK read the mailed policy. The new policy failed to list the barge as covered property despite the prior assurances of Insurance Systems that the error would be corrected. A wear-and-tear exclusion identical to the initial policy was present, in the same location, in the new policy.

On February 23, 2009, the barge sank into the Ohio River. RRK filed a claim with New Hampshire for the barge and its contents. On February 25, 2009, New Hampshire denied RRK's claim. New Hampshire stated that it denied RRK's claim because the barge and its contents were not listed in the policy as covered property. On April 3, 2009, Insurance Systems e-mailed New Hampshire confirming that Insurance Systems had represented to RRK that the barge and its contents would be covered property under the policy. After investigation, New Hampshire determined that the barge and contents were part of the covered property, but that the wear-and-tear exclusion in the policy provided grounds to deny coverage.

RRK filed suit against New Hampshire alleging breach of contract and bad faith and seeking declaratory judgment on coverage. On September 30, 2010, RRK filed a motion for summary judgment on its declaratory judgment claim asserting that the cause for the barge sinking was irrelevant and that New Hampshire should be strictly liable for the loss without regard to policy exclusions. A hearing was held on the motion on October 14, 2010. By an order entered June 22, 2011, the Circuit Court of Cabell County granted RRK's motion for partial summary judgment and found that the barge and its contents were covered under the policy because RRK had a reasonable expectation that they would be covered. It further found that New Hampshire failed to meet its strict burden of proof with regard to the exclusionary language so as to make the wear-and-tear exclusion legally operable.

The circuit court stayed further action in the case to allow the parties to appeal to this Court. New Hampshire now appeals the circuit court's order.

## II.

## STANDARD OF REVIEW

▇▇▇ All of the petitioner's assignments of error relate to whether the circuit court erred in granting partial summary judgment in favor of the respondents. The respondent's cross assignment of error also relates to a finding made in the order granting summary judgment. "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . . ." Syl. pt. 4, in part, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Thus, "[t]he circuit court's function at the summary judgment stage is . . . to determine whether there is a genuine issue for trial." Syl. pt. 3, in part, *Id.*

" 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Id.*

▇▇▇ This Court reviews *de novo* a circuit court's grant of partial summary judgment. Syl. pt. 1, *Id.* ("A circuit court's entry of summary judgment is reviewed *de novo*.").

## III.

## ANALYSIS

▇▇▇ The circuit court's June 22, 2011, order which granted partial summary judgment in favor of RRK found that RRK "had a Reasonable Expectation of Insurance Coverage for the subject Barge and Contents." The record demonstrates without question

that RRK was repeatedly assured that the barge and its contents were covered property under the insurance contract. Indeed, both RRK and New Hampshire agree that the barge and its contents were part of the covered property despite inadvertently being omitted from the policy.

■ Regarding the omission of the barge and its contents, we find that *Keller v. First National Bank,* 184 W.Va. 681, 403 S.E.2d 424 (1991), is instructive. In that case, the bank offered insurance to the insured, and the offer was accepted by the insured with consideration. The bank then discovered that its offer of insurance was a mistake, and the bank attempted to deny coverage. The Court held in *Keller* that "[o]nce an insurer creates a reasonable expectation of insurance coverage, the insurer must give the coverage or promptly notify the insured of denial." Syl. pt. 1, in part, *Id.*

We find that in the case *sub judice,* the repeated assurances of Insurance Systems, as agent of New Hampshire, created a reasonable expectation that the barge and its contents would be covered by the insurance contract.[1] Upon our *de novo* review of this issue, we conclude that there is no question of fact regarding whether the barge and its contents are covered property because *all*

parties agree that the property is covered and because RRK had a reasonable expectation that the property would be covered. The circuit court did not err in its property coverage finding.[2] We therefore turn to the issue of whether the wear-and-tear exclusion contained in the mailed copies of the policy, but not in the 17–page-fax, is valid.

The main crux of the petitioner's six assignments of error[3] is that the circuit court erred by granting the respondent's motion for partial summary judgment regarding the invalidity of the wear-and-tear exclusion to coverage. In its June 22, 2012 order, the circuit court found that New Hampshire could not "meet its legal burden to prove that it sufficiently made known any of the proffered Exclusionary Language to [RRK], such that the reasonable Insured could appreciate the effects of such Exclusionary language on its coverage." On appeal, RRK argues that it relied on the 17–page fax, which did not contain a wear-and-tear exclusion, and that therefore the wear-and-tear exclusion in the policy was not a valid part of the insurance contract.

This case involves a discrepancy between materials provided to RRK prior to purchasing the policy and the policy that was actually issued. This Court dealt with a similar

1. The doctrine of reasonable expectations is discussed, *infra,* in greater detail with regard to the validity of the exclusions in the policy.

2. We decline to address New Hampshire's assertion that the circuit court's finding was moot because, regardless, New Hampshire does not dispute that the barge and its contents are covered by the insurance contract.

3. Specifically, the petitioner's assignments of error are as follows:
1. The lower court's reformation of a commercial marine insurance policy to strip all written policy exclusions for covered property did not meet the parties' mutual original intentions and is contrary to West Virginia law of contract reformation.
2. The lower court misapplied the doctrine of reasonable expectations and West Virginia common law set forth in *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.* to conclude that the reformation of a policy to add inadvertently excluded property necessarily means that no written policy exclusions apply to that property.
3. The lower court's interpretation of the common law set forth in *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.* is contrary to public policy.

4. The lower court erred in concluding that in every instance, an insurer has an affirmative duty to prove that the insured understood even clearly written, unambiguous policy exclusions contained in the policy of insurance.
5. The lower court erred in concluding that, as a matter of law, the insurance policy exclusions were not adequately communicated to RRK, Inc.
6. The lower court erred in applying the doctrine of reasonable expectations in its June 22, 2011, order to add the barge as covered property to the insurance policy because the issue was legally moot.
The West Virginia Insurance Federation submitted an *amicus* brief in which it requests that the Court consider "whether mailing an insurance policy to an insured that contains conspicuous, plain and clearly-worded exclusions is sufficient to 'bring such provisions to the attention of the insured' under West Virginia law." Because this issue is subsumed by New Hampshire's assignments of error, we address the issue within our analysis of New Hampshire's assignments of error.

discrepancy in *Romano v. New England Mutual Life Insurance Co.,* 178 W.Va. 523, 362 S.E.2d 334 (1987). In *Romano,* the insured received promotional materials prepared by the insurer that were inconsistent with the policy issued by the insurer. The Court found that "where an insurer provides sales or promotional materials to an insured under a group insurance policy, which the insurer knows or should know will be relied upon by the insured, any conflict between such materials and the master policy will be resolved in favor of the insured." *Id.* at 529, 362 S.E.2d at 340. The Court continued,

> We believe the materials issued by [the insurer] were such as to lead [the insured] to a reasonable and honest belief that he was covered under the policy. It would, we believe, be inequitable to permit [the insurer] to enforce the more onerous policy condition where previous communications with the insured suggested its nonexistence.

*Id.*

■ Both *Keller,* as discussed *supra,* and *Romano* applied the doctrine of reasonable expectations. The Court adopted the doctrine of reasonable expectations in Syl. pt. 8, *National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. United States Fidelity & Guaranty Co.,* 202 W.Va. 308, 504 S.E.2d 135 (1998), holding, "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of the policy provisions would have negated those expectations." When *McMahon & Sons* was decided, the doctrine of reasonable expectations was applied only as a canon of construction for evaluating ambiguous insurance contracts. Since then, the doctrine of reasonable expectations has evolved to apply to cases, such as *Romano* and *Keller,* in which a policy provision on which denial of coverage is based differs from the prior representations made to the insured by the insurer. *See Luikart v. Valley Brook Concrete & Supply,*

*Inc.,* 216 W.Va. 748, 755, 613 S.E.2d 896, 903 (2005); *Am. Equity Ins. Co. v. Lignetics, Inc.,* 284 F.Supp.2d 399, 404–06 (2003).

■ We find that the doctrine of reasonable expectations applies to the case at bar. To support summary judgment under the doctrine, a court must find that the insured had an objectively reasonable expectation of coverage under the insurance contract. In the case *sub judice,* the circuit court found that the wear-and-tear exclusion was not placed in a way as to allow RRK to reasonably expect the existence of the exclusion.

■ New Hampshire argues that the doctrine of reasonable expectation was improperly construed in this case because the wear-and-tear exclusion was conspicuous, thus making RRK's reliance on the 17–page fax unreasonable. Syl. pt. 10, *McMahon & Sons,* 177 W.Va. 734, 356 S.E.2d 488, *overruled on other grounds by Potesta v. United States Fidelity & Guaranty Co.,* 202 W.Va. 308, 504 S.E.2d 135 (1998), states that

> [a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.

The parties do not dispute that the exclusion at issue was conspicuous in the policy. RRK argues, however, that because the wear-and-tear exclusion was not placed in the 17–page fax, it was not placed in such a way as to bring the exclusion to RRK's attention. RRK asserts that under *Romano,* the 17–page fax, which omitted the wear-and-tear exclusion, suggested the nonexistence of any such exclusion. Therefore, RRK concludes that it was reasonable for it to rely solely on the 17–page fax, which was sent in response to a request for "coverage forms" and that it would be inequitable to enforce the wear-and-tear exclusion now.

In *Keller,* this Court said, "An action based on a reasonable expectation of insurance usually will raise substantial questions of fact." 184 W.Va. at 685, 403 S.E.2d at 428. Both parties in this case have failed to show, as a matter of law, whether the wear-and-tear

exclusion should apply. Under the unique facts of this case, we find that a substantial question of fact exists: Was RRK objectively reasonable in relying solely on the 17–page fax as containing all of the terms of their insurance contract with New Hampshire and in failing to review the actual policy mailed to it on two occasions? Because there is a question of fact, we conclude upon our *de novo* review of this case that summary judgment is precluded with regard to the applicable exclusions and that the circuit court erred by granting summary judgment on the issue.

In addition to New Hampshire's six assignments of error, RRK asserts one cross-assignment of error: The circuit court erred in finding that the parties agreed that the 2008–09 renewal policy was mailed to, and received by, the respondent. Upon our *de novo* review, we find no merit in this position. The record reflects that there is no question of fact as to whether the policy was mailed to and received by RRK. Depositions presented to the circuit court of both Rudy and Kelly Lee indicate they both recalled receiving the policy but that neither had read it. The deposition of Rudy Lee proceeded as follows, after he was presented with a copy of the policy:

Q. Okay. Is it fair to say that you did not look at this document, Exhibit 7, before the barge sank?

A. This—yeah—ask me that again, please.

Q. Sure. I'm sort of following up on something we sort of covered before. It sounded like you did not read Exhibit 7 when you first got it.

A. Correct.

Q. And, you know, it sounded like you put it in a file and, you know, you had it, you know, in your files. . . .

The deposition of Kelly Lee was similar:

A. I remember receiving a packet, yes, of documents.

Q. From Arch Keller [an Insurance Systems agent]?

A. Correct.

Q. And you believe that [the policy] was in that packet?

A. Yes.

Q. And did you read it when you receive it?

A. No.

Q. Probably put it in a file somewhere?

A. Probably.

The circuit court also questioned the parties with regard to receipt of the renewal policy during the October 14, 2010, hearing on RRK's motion for summary judgment.

THE COURT: Okay. Let me get this straight. You're alleging that you—before the barge sank, sent them a complete policy and the wear and tear was included in it?

MS. LUSK: Yes.

THE COURT: And you're alleging that they never received a complete policy with the wear and tear in it before the barge sank?

MR. DUFFIELD: No, Your Honor. What I'm telling you is the 17–page fax had not the exclusions.

THE COURT: I understand that. I'm asking you did they receive any policy that was the full policy?

MR. DUFFIELD: About two or three weeks later, as suggested, there was a policy mailed, that was not read, the exclusions were not read. Fitting all of the case law.

THE COURT: But they received it?

MR. DUFFIELD: Yes, they received it.

THE COURT: Okay, I'm just trying to get my facts straight.

MR. DUFFIELD: That's right. Now, Your Honor—

THE COURT: No. I'll let her continue. I just wanted to get that fact straight.

MR. DUFFIELD: That's right.

The deposition testimony of Rudy and Kelly Lee, and the exchange between the parties' attorneys and the court during the hearing establish that there is no question of fact regarding whether the renewal policy was mailed to and received by RRK. Therefore, the circuit court did not err in finding, as a matter of law, that the renewal policy was mailed to and received by RRK.

### IV.

### CONCLUSION

For the reasons set forth above, this Court affirms, in part, the circuit court's order en-

tered June 22, 2011, finding that the barge and its contents are covered property under the insurance contract as a matter of law. We also affirm the circuit court's finding that the renewal policy was mailed to and received by RRK. We reverse the circuit court's order with regard to its finding that the wear-and-tear exclusion is invalid, and we remand this case for proceedings consistent with this opinion.

Affirmed, in part; reversed, in part; and remanded.

Chief Justice KETCHUM and Justice McHUGH dissent and reserve the right to file separate opinions.

KETCHUM, Chief Justice, with whom Justice McHUGH joins, dissenting:

I dissent from the majority's opinion. I believe that the majority opinion has taken a doctrine designed to interpret *ambiguous* insurance policy language where a policy in fact was provided to an insured, and applied it to a situation where the policy language is clear and unambiguous.

The exclusions in the insurance policy at issue were conspicuous, plain and unambiguous. The majority opinion correctly finds:

1) "Notably, at the top of the first substantive page of the mailed policy, language was included in boldface and capitol 12–point font excluding coverage of property damaged by 'wear, tear, and/or deterioration.'";

2) "The parties do not dispute the exclusion at issue was conspicuous in the policy";

3) "No person with RRK (the plaintiff) read the mailed policy." RRK received the initial policy and, approximately a year later, a new policy. Neither policy was read.

It has always been our law that insureds are bound by a plain and unambiguous exclusion in their policy. "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970).

If the policy language is ambiguous, then the policy can be interpreted by applying the reasonable expectations of the insured, that is to say, the objectively reasonable expectations of the insured regarding the ambiguous terms of the insurance contract will be honored. However, when a policy is provided to an insured the doctrine of reasonable expectations is limited to those instances in which the policy language is ambiguous. *National Mutual Ins. Co. v. McMahon*, 177 W.Va. 734, 742, 356 S.E.2d 488, 496 (1987).

I am troubled by the majority's opinion because, although the exclusions in the plaintiff's insurance policy were conspicuous, plain, and unambiguous, we apply the reasonable expectation doctrine. I realize that the plaintiff was faxed a coverage form that did not contain an exclusion that was in the policy received by plaintiff about 30 days later, and that this may have engendered some confusion by the plaintiff. Nonetheless, it is established that the plaintiff did not read the policy, relying instead on the representations in a faxed coverage form which predated the issuance of the policy. The majority opinion says that the doctrine of reasonable expectations may have application to these facts to determine the extent of coverage.

This brings us to the legal issue which the majority opinion does not clearly resolve. The opinion cites as authority two cases that apply the doctrine of reasonable expectation of coverage in circumstances not involving ambiguous insurance policy language, because in each of these cases the insured never received an insurance policy or a certificate of insurance. Does the rationale in these two cases apply here where the plaintiff did receive a policy—actually two policies—with plain and conspicuous exclusions?

The first case is *Romano v. New England Mut. Life Ins. Co.*, 178 W.Va. 523, 362 S.E.2d 334 (1987). The plaintiff purchased a group policy. He *did not* receive a policy or certificate of insurance. The insurance company denied coverage because of a policy exclusion in the group policy. We refused to apply the policy exclusion because the only coverage information supplied to the insured was in promotional materials which did not alert him to the exclusion.

The second case, *Keller v. First National Bank*, 184 W.Va. 681, 403 S.E.2d 424 (1991), involved credit life insurance sold by a bank. The plaintiff *did not* receive a certificate of insurance or insurance policy. The bank accepted the plaintiff's premiums. Later, the bank denied coverage stating that the offer to insure was a mistake. We concluded that "procedures which foster a misconception about the insurance to be purchased may be considered with regard to the doctrine of reasonable expectation of insurance." *Costello v. Costello*, 195 W.Va. 349, 352, 465 S.E.2d 620, 623 (1995) (discussing *Keller*, 184 W.Va. at 685, 403 S.E.2d at 428).

The case *sub judice* is different. The plaintiff received two policies containing the conspicuous, plain and unambiguous exclusion. I fear that the majority's opinion has stretched our law of reasonable expectations into areas where it was not designed to go and undermines the long-established principle that "[a] party to a contract has a duty to read the instrument." *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986).

In view of the foregoing concern, I respectfully dissent. I am authorized to state that Justice McHUGH joins in this separate opinion.