No. 11-1186 – *American States Insurance Company v. Barbara Surbaugh, Administrator of the Estate of Gerald Kirchner*

Benjamin, Chief Justice, concurring:

Although I agree that this case must be reversed and remanded, I believe the majority has applied the incorrect analysis for deciding the case.

Factually, this case is the fraternal twin sister of a case recently decided by this Court, *New Hampshire Ins. Co. v. RRK, Inc.*, 230 W. Va. 52, 736 S.E.2d 52 (2012); the cases are remarkably similar, though not identical. In *New Hampshire*, the insured, RRK, Inc. ("RRK"), sought insurance to cover damage to a barge and two docks on the Ohio River. RRK ultimately purchased insurance from New Hampshire Insurance Company ("New Hampshire"), but RRK dealt solely with an agent of New Hampshire during the negotiations and the sale. Prior to agreeing to purchase insurance from New Hampshire, RRK requested a copy of coverage forms for the proposed policy. In reply, the agent faxed a 17-page document which stated, "Per our phone conversation of this morning, attached you will find the coverage forms you requested."

After purchasing the insurance, New Hampshire mailed a copy of the insurance policy to RRK. RRK representatives testified that they did not read this policy, nor the renewal policy sent one year later. Two years after purchasing the insurance, the barge sank. New Hampshire denied RRK's claim for damages, arguing that a wear-and-

1

tear exclusion appearing at the top of the first substantive page of the policy excluded coverage of the barge. While the mailed policy did contain a wear-and-tear exclusion, the 17-page faxed document did not.

The pertinent facts of the case at bar are parallel to those of *New Hampshire*. Here, Mr. Grimmett sought insurance to cover his sporting goods store. He ultimately purchased insurance from American States Insurance Company ("American States"), but he dealt solely with an agent of American States during the negotiations and the sale. Prior to purchasing the insurance, Mr. Grimmett and the agent discussed the coverage to be provided by the policy in three separate phone conversations, each lasting approximately 10 minutes. Additionally, the agent sent to Mr. Grimmett a 1-page sales offer proposal.

After purchasing the insurance, American States mailed a copy of the insurance policy to Mr. Grimmett. Mr. Grimmett testified that he did not read this policy, nor the renewal policy sent one year later. Two years after purchasing the insurance, one of his employees accidently shot and killed another employee. When the estate of the deceased employee attempted to collect under the policy, American States refused, arguing that an exclusion appearing on the first substantive page of the policy excluded coverage for the accident. While the mailed policy did contain the exclusion, Mr. Grimmett and the agent never discussed exclusions to the contract, and no exclusions appeared on the 1-page sales offer proposal.

In this case, the majority hinged its analysis on whether the exclusion at issue was adequately disclosed to Mr. Grimmett. Undoubtedly, it was disclosed; the policy was mailed to Mr. Grimmett, and it was placed in the policy in such a way as to bring it to the attention of the insured. The majority completely overlooked the real issue, which was also the primary issue in *New Hampshire*: whether, based on the representations of the insurance company, the insured had a reasonable expectation that the exclusion at issue was part of the contract.

The doctrine of reasonable expectations[1] comes into play when there is a discrepancy between the materials provided prior to the purchase of an insurance policy and the policy that is actually issued. Here, Ms. Surbaugh argues that because the phone calls between Mr. Grimmett and the agent along with the 1-page sales offer did not include discussion of exclusions, Mr. Grimmett could not have reasonably expected that the exclusion at issue would be part of the contract. This argument is strikingly similar to that proposed in *New Hampshire*. The difference in the proper outcomes in these cases, though, is through the application of the law to the facts.

---

[1] "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though a painstaking study of the policy provisions would have negated those expectations." Syl. pt. 8, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998).

In *New Hampshire*, we found that "[t]o support summary judgment under the doctrine [of reasonable expectations], a court must find that the insured had an objectively reasonable expectation of coverage under the insurance contract." Because of the discrepancy between the pre-sale representations of coverage—the phone conversations and the "coverage forms" requested by RRK—and the post-sale representations of coverage, we decided that a substantial question of fact existed which warranted remanding the case to the circuit court so that the issue could be decided by a fact finder. The present case is different in that the circuit court should have found that the short series of 10-minute phone calls and the 1-page sales offer could not objectively have lead Mr. Grimmett to believe that the multi-page policy he received in the mail encapsulated only what was discussed in the phone calls and the sales offer.

In footnote 13 of the opinion in the case *sub judice*, the majority attempts to distinguish the two cases by stating that the case at bar "does not involve a conflict between a draft of the policy coverage forms and the policy itself." The phone calls and the 1-page sales offer in this case are parallel to the phone calls and 17-page faxed document in *New Hampshire*. The "conflict" described by the majority is identical to both scenarios; the pre-purchase documents and representations in both cases did not contain the disputed exclusions while the mailed policies did.

For the reasons stated above, I concur.

4