IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0711

_____

FILED

**November 12, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MOTORISTS MUTUAL INSURANCE CO.,
Petitioner

v.

JACOB and LISA ZUKOFF and
AUTOMOTIVE ACCESSORIES LIMITED, INC.
d/b/a ACCESSORIES LTD.,
Respondents

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 18-C-27

REVERSED

_____

Submitted: October 13, 2020
Filed: November 12, 2020

Donald J. McCormick, Esq.
Dell, Moser, Lane & Loughney, LLC
Pittsburgh, Pennsylvania
Counsel for Petitioner

Alex J. Shook, Esq.
Andrew G. Meek, Esq.
HAMSTEAD, WILLIAMS & SHOOK,
PLLC
Morgantown, West Virginia
Counsel for Respondents

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

# SYLLABUS BY THE COURT

1. "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus, *Keffer v. Prudential Insurance Company*, 153 W.Va. 813, 172 S.E.2d 714 (1970)."

2. "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syllabus Point 1, *Berkeley County Public Service District v. Vitro Corporation of America*, 152 W. Va. 252, 162 S.E.2d 189 (1968).

Armstead, Chief Justice:

On January 7, 2017, the building housing Jacob and Lisa Zukoffs' business, Accessories Ltd. (collectively, "Respondents"), was inundated with sewage and they sought coverage for their resulting losses from Motorists Mutual Insurance Co. ("Petitioner") under their general commercial liability insurance policy. Pointing to an exclusion, Petitioner denied coverage and Respondents filed a declaratory judgment action to determine the rights and responsibilities of the parties under the insurance policy.[1] The circuit court granted Respondents' motion for summary judgment and denied Petitioner's summary judgment motion, finding that the exclusion for "water that backs up or overflows from a sewer, drain or sump" was inapplicable so that the policy covered Respondents' loss. We have considered the briefs, the record and the arguments of counsel, as well as the relevant legal authorities. For the reasons set forth below, we agree with Petitioner that the exclusion applies and there is no insurance coverage for the loss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Accessories Ltd. is located at the corner of 1st Street and Washington Avenue in Moundsville, West Virginia. On January 7, 2017, the sewer flooded the Accessories Ltd. premises. On that day, at around noon, J.R. Logsdon ("Logsdon"), an employee of the Moundsville Sanitary Board ("Board"), was informed that a local resident heard gurgling sounds in her basement, which was indicative of a clog in the sewer system. He

---

[1] Respondents also brought suit against the Moundsville Sanitary Board which is not a party to this appeal.

1

drove to a location near the corner of 2nd Street and Washington Avenue where there had been known sewage clogs in the past to attempt to clear the sewer line. To do so, Logsdon inserted a hose into the sewer line which injected water into the line in an attempt to clean it out. After deploying the hose, the sewer level returned to normal and Logsdon left the area.

Approximately ten minutes later, Logsdon was again contacted and told that sewage was coming out of the cleanouts directly in front of Accessories Ltd. He immediately drove by that location and observed sewage shooting "a couple of feet" into the air from a clean out near Accessories Ltd. To attempt to clear the clog, Logsdon returned to his prior location near the corner of 2nd Street and Washington Avenue and once again inserted the hose and injected water into the sewer line. This time, his efforts were futile and he was unable to open the line. Realizing this was not a simple problem, he contacted his supervisor, Tim Minor ("Minor"), Assistant Superintendent for the Board, and moved to a down-line location near 1st Street and Washington Avenue. When Minor arrived, Logsdon discovered a blockage in the sewer line at a manhole. Minor then used a hoist to lower Logsdon into the manhole where he attempted to use the hose to open the sewer line. Logsdon was unsuccessful in this attempt. Looking into the line, Logsdon observed crushed terracotta pipe blocking the flow. Using his hands, Logsdon reached into the line and pulled pieces of the terracotta pipe out, which unclogged the line and caused the trapped liquids to hit Logsdon in the stomach.

2

By the time Logsdon was able to unclog the sewer line, the damage to Accessories Ltd.'s building had been done. With nowhere to go, the blockage caused sewage to flood into the building housing Accessories Ltd., causing damage. Respondents were insured by Petitioner under a general commercial liability policy. This policy provided in pertinent part as follows:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
>
> A. COVERAGE
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> . . . .
>
> CAUSES OF LOSS – SPECIAL FORM
>
> A. COVERED CAUSES OF LOSS
>
> Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
>
> 1.      Excluded in Section B., Exclusions; or
> 2.      Limited in Section C., Limitations;
>
> that follow.
>
> . . . .
>
> B. EXCLUSIONS
>
> 1.      We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

3

. . . .

g.      Water

. . . .

(3) Water that backs up or overflows from a sewer, drain or sump[.]


Respondent Jacob Zukoff sought coverage from Petitioner for the damage to the Accessories Ltd. premises. Coverage for this loss was denied by Petitioner as falling under the water exclusion. Respondents then brought a declaratory judgment action[2] in Marshall County Circuit Court to determine the rights of the parties under the insurance contract.

Both Petitioner and Respondents filed motions for summary judgment. On July 19, 2019, the circuit court denied Petitioner's motion and granted Respondents' motion, reasoning that the insurance policy did not define the term "backup," rendering the policy language ambiguous. Due to this perceived ambiguity, the circuit court found that the policy language had to be interpreted. In its interpretation, the circuit court applied the doctrine of reasonable expectations. Citing to no authority for this application, the circuit court determined that it would not be reasonable to expect coverage if the source of the water and sewage was on the insured's premises. Conversely, the circuit court found that

_____

[2] *See* The Uniform Declaratory Judgments Act, W. Va. Code §§ 55-13-1 – 55-13-16 (1941).

4

it would be reasonable to expect coverage if the source was outside the premises and "used the insured's sewer connection as a conduit to enter the insured's property." The circuit court concluded that the "damaging substances did not originate from inside the business but rather it [sic] infiltrated through a conduit into the business as a result of a blockage that was not located on the insured premises." Accordingly, the circuit court found that the policy exclusion was inapplicable.

It is from entry of the circuit court's July 19, 2019, order that Petitioner appeals.

## II. STANDARD OF REVIEW

In this case, Respondents sought a declaratory judgment and the circuit court entered summary judgment in their favor. The standard of review for entry of a declaratory judgment is the same as that for entry of summary judgment – *de novo*. *Compare* Syllabus Point 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995), *with* Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). "As we explained in *Cox,* 'because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo.*'" *Blankenship v. City of Charleston*, 223 W. Va. 822, 824-25, 679 S.E.2d 654, 656-57 (2009) (*quoting Cox*, 195 W. Va. at 612, 466 S.E.2d at 463). Further, "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination which, like the court's summary judgment, is

5

reviewed *de novo* on appeal." *Payne v. Weston*, 195 W. Va. 502, 506–07, 466 S.E.2d 161, 165–66 (1995).

Thus, our review of this matter is *de novo*. With that standard in mind, we now address the issues raised in this appeal.

## III. ANALYSIS

This is a matter of first impression which calls upon this Court to determine if the term "backs up" contained in the commercial liability policy exclusion is ambiguous. The circuit court found because this term was undefined in the policy that it was therefore ambiguous. To resolve the putative ambiguity, the circuit court employed the doctrine of reasonable expectations[3] to construe the exclusion. We disagree with the circuit court and

---

[3] In *New Hampshire Insurance Co. v. RRK, Inc.*, 230 W. Va. 52, 736 S.E.2d 52 (2012), we explained the doctrine of reasonable expectations:

> The Court adopted the doctrine of reasonable expectations in [Syllabus Point] 8, *National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. United States Fidelity & Guaranty Co.,* 202 W. Va. 308, 504 S.E.2d 135 (1998), holding, "With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."

(continued . . .)

6

conclude the exclusion is clear and unambiguous. We also note that the circuit court did not acknowledge that the language in the policy provided for exclusions in two separate instances – "water that backs up **or** overflows from a sewer, drain or pump." (emphasis added). Because we must read the entire policy as a whole, the events that transpired and caused sewage to flow into the Accessories, Ltd. premises fell squarely within the unambiguous policy exclusion.

The initial question is whether the terms contained in the policy are clear or are subject to interpretation.

---

> When *McMahon & Sons* was decided, the doctrine of reasonable expectations was applied only as a canon of construction for evaluating ambiguous insurance contracts. Since then, the doctrine of reasonable expectations has evolved to apply to cases, such as *Romano* and *Keller,* in which a policy provision on which denial of coverage is based differs from the prior representations made to the insured by the insurer. *See Luikart v. Valley Brook Concrete & Supply, Inc.,* 216 W. Va. 748, 755, 613 S.E.2d 896, 903 (2005); *Am. Equity Ins. Co. v. Lignetics, Inc.,* 284 F.Supp.2d 399, 404–06 (2003).

*New Hampshire Ins. Co.*, 230 W. Va. at 58, 736 S.E.2d at 58. Because we find that the policy language is unambiguous and no evidence was adduced below that the Respondents were made prior representations of their coverage, there is no basis upon which to apply the doctrine of reasonable expectations.

The circuit court found the policy to be ambiguous, applied this doctrine, and made a distinction between a clog in the sewer line on the Respondents' premises versus a clog in the sewer line off the premises. As we find the policy to be unambiguous, we reject the circuit court's conclusion that the location of the clogged sewer line was a deciding factor as to whether the coverage exclusion applies.

7

In West Virginia, insurance policies are controlled by the rules of construction that are applicable to contracts generally. We recognize the well-settled principle of law that this Court will apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason. Our primary concern is to give effect to the plain meaning of the policy and, in doing so, we construe all parts of the document together. We will not rewrite the terms of the policy; instead, we enforce it as written. Syllabus Point 1 of *Russell v. State Automobile Mutual Insurance Company,* 188 W.Va. 81, 422 S.E.2d 803 (1992), states: "'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 172 S.E.2d 714 (1970)." Thus, we are to ascertain the meaning of the policy as manifested by its language.

*Payne*, 195 W. Va. at 507, 466 S.E.2d at 166.

Conversely, "[t]he term 'ambiguity' is defined as language 'reasonably susceptible of two different meanings' or language 'of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning [.]' [Syllabus Point] 1, in part, *Shamblin v. Nationwide Mut. Ins. Co.,* 175 W.Va. 337, 332 S.E.2d 639 (1985)." *Id.* However, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syllabus Point 1, *Berkeley Cty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 152 W. Va. 252, 162 S.E.2d 189 (1968).

[A] court should read policy provisions to avoid ambiguities and not torture the language to create them. "'If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as

8

> a matter of law and grant summary judgment because no interpretive facts are in genuine issue.'" *Williams v. Precision Coil, Inc.,* 194 W.Va. at 66 n.26, 459 S.E.2d at 343 n.26, *quoting Goodman v. Resolution Trust Corp.* 7 F.3d 1123, 1126 (4th Cir.1993).

*Payne*, 195 W. Va. at 507, 466 S.E.2d at 166.

The circuit court found, and Respondents urge, that simply because the term "backs up" is undefined that the lack of a definition automatically renders that term ambiguous. This contention is contrary to prior West Virginia law, which "has never required every term in an insurance policy, nor any contract for that matter, to be defined or else be found ambiguous." *Blake v. State Farm Mut. Auto. Ins. Co.*, 224 W. Va. 317, 322, 685 S.E.2d 895, 901 (2009). Just because the term "backs up" is undefined does not automatically render that term ambiguous.

Although this Court has not examined this issue, we are aware of one West Virginia Circuit Court that has. *See Sylvania Props., LLC v. S. Putnam Pub. Serv. Dist.*, No. 05-C-1497, 2006 WL 6179293 (W. Va. Cir. Ct. Nov. 03, 2006). *Sylvania* arose in Kanawha County. *Id.* In that matter, the circuit court determined that a policy exclusion with language similar to the language of Respondents' policy here, excepting coverage for "water or sewage which backs up through sewers or drains, or which enters into and overflows from within a sump pump, sump pump well, or any other system designed to remove subsurface water which is drained from the foundation area[,]" was clear and

9

unambiguous.  *Id*.  Thus, the circuit court applied the clear and unambiguous policy language and found that it did "not need to construe or interpret it." *Id*.

Other jurisdictions have reached results similar to the circuit court's in *Sylvania*.  *See Jackson v. Am. Mut. Fire Ins. Co.*, 299 F. Supp. 151, 156 (M.D.N.C. 1968), *aff'd,* 410 F.2d 395 (4th Cir. 1969) (concluding that provision excepting "water which backs up through sewers or drains," is not ambiguous);  *Old Dominion Ins. Co. v. Elysee, Inc.*, 601 So. 2d 1243, 1245 (Fla. Dist. Ct. App. 1992) (ruling that coverage exception of "[w]ater that backs up from a sewer or drain," is unambiguous);  *Penn-Am. Ins. Co. v. Mike's Tailoring*, 22 Cal. Rptr. 3d 918, 922-3 (Ct. App. 2005) (finding that exclusion for "[w]ater that backs up from a sewer or drain," was facially unambiguous.).

However, the circuit court's analysis should not have merely ended with a determination of whether or not the policy term "backs up" was ambiguous.  Our prior holdings require that the circuit court examine and construe all parts of the policy together. Upon applying the proper analysis, the policy exclusion applies not only to water that "backs up" but also to water that "overflows."

This position is bolstered by a case from the California Court of Appeals for the Second District that examined essentially the same exclusionary language at issue in this matter – "loss or damage caused directly or indirectly  by . . . [w]ater that backs up or overflows from a sewer, drain or sump." *Cardio Diagnostic Imaging, Inc. v. Farmers Ins.*

10

*Exch.*, 150 Cal. Rptr. 3d 798, 799 (Ct. App. 2012). In *Cardio*, there was a blockage in a sewer line "approximately 20 to 40 feet away from the toilet," which caused the toilet to overflow. *Id.* at 801. Finding the language "backs up" or "overflows" to be facially unambiguous, the California court reasoned that "[a] layperson would understand it to include both water that comes up out of a sewer, drain, or sump ('backs up') and water that spills over from a sewer, drain, or sump ('overflows') due to a blockage. *Id.* at 803.

We are persuaded by these authorities and conclude that the policy terms "backs up" and "overflows" are unambiguous.[4] Under normal operation of the sewer, water did not flow out of the sewer line and into the Accessories, Ltd. premises. In fact, under normal operation, liquids flowed away from the premises. However, in the event giving rise to this matter, water came up out of the sewer and entered the premises exactly how the circuit court characterized it – the water "used the insured's sewer connection as a conduit to enter the insured's property." Indeed, no matter how the entry of water into the premises from the sewer was described, a plain reading of the policy language clearly shows that a person would understand that coverage for this loss would be excluded where

---

[4] Despite the clear and unambiguous language in the policy, Respondents argue that because the Board injected water into the line there should be insurance coverage for Respondents' loss. However, under the terms of the policy it is of no moment as to what caused the damages as "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Under the policy language, even though the Board injected water into the sewer line, any back up or overflow of water through the sewer – regardless of its cause – was excluded from coverage.

water "back[ed] up" and "overflow[ed]" into the Accessories, Ltd. premises. Therefore, we find that the language of the exclusion is not ambiguous as a matter of law. Applying that clear and unambiguous language to the undisputed facts of this case, it is clear that the circuit court erred when it found the exclusion to be inapplicable.

## IV. CONCLUSION

For the foregoing reasons, we reverse the circuit court's grant of Respondents' motion for summary judgment and enter judgment here in favor of Petitioner.

Reversed and judgment entered.