487 S.E.2d 348

**Susan LAREW and D. Keith Larew, Plaintiffs Below, Appellants,**

v.

**MONONGAHELA POWER COMPANY and Asplundh Tree Expert Company, Defendants Below, Appellees.**

No. 23787.

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1997.

Decided May 30, 1997.

---

Thomas C. Cady, Morgantown, for Appellants.

James T. Boggs, Fairmont, for Appellee Monongahela Power Company.

Stephen M. LaCagnin, Morgantown, Christopher L. Callas, Charleston, Jackson & Kelly, for Appellee Asplundh Tree Expert Company.

PER CURIAM:

Susan and D. Keith Larew appeal a summary judgment order of the Circuit Court of Preston County dismissing their suit against Monongahela Power Company and Asplundh Tree Expert Company, which alleged that the appellees illegally and unreasonably trimmed the Larews' trees under a utility easement. The appellees maintain that "reasonableness" is not an issue because the determination of the tree trimming rests solely with the appellees. Because there are genuine issues of material fact concerning the reasonableness of the tree trimming, we reverse the circuit court and remand for additional proceedings.

## I.

### Facts and Background

In 1975, Glen Larew, a predecessor in interest of Susan and D. Keith Larew ("the

Larews"), granted a written easement to Monongahela Power Company ("Monongahela") giving Monongahela the right to trim, cut or remove trees in order to maintain electric service.[1] According to the Larews, there was also a "gentlemen's agreement" in 1975 that a 300–year old white oak tree on the Larew property would never be touched.

On March 17, 1994, Asplundh Tree Expert Company ("Asplundh"), Monongahela's tree trimming contractor, contacted the Larews to inform them that tree trimming would be provided under the easement. Discussions were held between the Larews and Monongahela about the proposed trimming. On May 25, 1994, Asplundh trimmed three trees on the Larews' property. The Larews maintain that the 300–year old white oak tree was severely cut.

On August 2, 1994, the Larews filed suit in Preston County contending that the appellees had wrongfully cut the Larews' trees.[2] After some discovery, the appellees filed a motion for summary judgment on January 9, 1995 alleging that there were no material facts in dispute and that the appellees were entitled to judgment as a matter of law. In a July 14, 1995 letter opinion, the circuit court found the Larews' arguments to be without merit. On August 14, 1995, the circuit court, based on its July 14, 1995 letter opinion, entered an order granting the appellees summary judgment. The Larews then appealed to this Court.

## II.

### Discussion

### A.

### Standard of Review

■ The sole issue on appeal is the appropriateness of summary judgment. We review *de novo* a circuit court's grant of summary judgment. Syllabus Point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) states: "A circuit court's entry of

summary judgment is reviewed *de novo*." *See Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995). Our traditional principle for granting summary judgment is stated in Syllabus Point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963):

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord* Syllabus Point 1, *Williams v. Precision Coil, Inc., supra;* Syllabus Point 2, *Painter v. Peavy, supra;* Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992). *See Williams, supra* and *Painter, supra* for discussions of the principles for granting summary judgment.

■ Rule 56 [1978] of the *West Virginia Rules of Civil Procedure* is "'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' if there essentially 'is no real dispute as to salient facts' or if it only involves a question of law." *Williams*, 194 W.Va. at 58, 459 S.E.2d at 335, *quoting, Painter*, 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5, *quoting, Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). Subsection (c) of Rule 56 states, in pertinent part, that "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ In the present case, the Larews appeal on two main issues: (1) the trimming was performed in violation of a 1975 "gentlemen's agreement" not to trim the trees; and (2) the trimming performed was unreasonable under our case of *Kell v. Appalachian*

---

1. The 1975 Distribution Line Easement provides, in pertinent part:

   The Grantee [Monongahela] shall at all times have the right to control, cut, trim and remove trees, limbs and brush which in its opinion

may interfere with the exercise of its rights hereunder or endanger said facilities.

2. *See W.Va.Code,* 61–3–48(e) [1988](requiring written permission from and reasonable notice to the property's owner before trimming).

*Power Co.*, 170 W.Va. 14, 289 S.E.2d 450 (1982).[3] We begin by discussing the "gentlemen's agreement," which raises a question of law requiring a *de novo* review. *See Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 396 n. 19, 465 S.E.2d 841, 853 n. 19 (1995).

### B.

### Parol Evidence

██ The Larews maintain that the unwritten 1975 "gentlemen's agreement" changed the terms of the written easement given to Monongahela. The parol evidence rule, which generally prohibits the introduction of any extrinsic evidence to vary or contradict the terms of written contracts, was stated in Syllabus Point 1 of *North American Royal Coal Co. v. Mountaineer Developers, Inc.*, 161 W.Va. 37, 239 S.E.2d 673 (1977):

> "Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration." Syllabus Point 1, *Kanawha Banking and Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947).

██ It is well-settled, therefore, that prior or contemporaneous statements that contradict clear, unambiguous language of a written contract are inadmissible. Parol evidence may only be admitted to explain uncertain, incomplete or ambiguous terms. *Glenmark Associates, Inc. v. Americare of West Virginia, Inc.*, 179 W.Va. 632, 371 S.E.2d 353 (1988); *Holiday Plaza, Inc. v. First Federal Savings and Loan Ass'n of Clarksburg*, 168 W.Va. 356, 285 S.E.2d 131 (1981); *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980).

In this case, we find that the circuit court correctly found no merit on the issue that the 1975 "gentlemen's agreement" contradicted the clear terms of the 1975 easement.

### C.

### Reasonableness of the Trimming

The Larews maintain that there is a genuine issue of material fact concerning the reasonableness of the trimming that was done. The circuit court held that "the easement permits Mon Power to exercise *its own opinion* in determining how much to trim to prevent the trees from interfering with the power lines (emphasis added)" and that the rule of reasonableness stated in *Kell, supra*, did not apply.

██ In *Kell*, a power company, pursuant to an indenture similar to the easement in the present case, used aerial broadcast spraying of herbicides to control vegetation along its right-of-way. In *Kell*, 170 W.Va. at 17, 289 S.E.2d at 453, we discussed the property rights when a utility easement has been granted by stating:

> The fee interest in land over which a power company has been granted an easement remains in the party making the grant. The grantor-owner of the land retains the right to make any reasonable use of the land subject to the easement so long as that use is not inconsistent with the rights of the grantee. (footnotes omitted).

In exercising the rights granted under an easement, a power company must follow the rule of reasonableness. In other words, the power company "may not inflict unnecessary damage on the land" and "may not unreasonably increase the burden placed upon the servient tenement." *Kell*, 170 W.Va. at 17, 289 S.E.2d at 454.[4] These common law prin-

---

**3.** The Larews also question whether the notice of the trimming was reasonable. Because the Larews had actual advanced knowledge of the trimming, were able to discuss in advance the trimming and sought legal advice, in advance, we find that the circuit court correctly found that reasonable notice had been given.

**4.** The following is an more complete excerpt of *Kell*'s discussion of the common law principles concerning an utility easement:

> A power company, however, does have the right, under a general right-of-way easement, to enter upon the land to maintain and repair its equipment to the extent necessary to the safe and effective operation of that equipment. A power company, however, in exercising that right of entry, may not inflict unnecessary

ciples formed the basis for our decision in *Kell* holding that the indenture did "not authorize the power company to apply toxic herbicides to that right-of-way by aerial broadcast spraying." Syllabus, in part, *Kell.*

In *Kell*, we found that the right given by the utility indenture was "to cut and remove trees, overhanging branches or obstructions that endanger the safety, or interfere with the use, of the power company's lines on the right-of-way granted by the indenture." *Kell*, 170 W.Va. at 20, 289 S.E.2d at 457.

◾ In this case, the Larews maintain that the appellees failed to adhere to the reasonableness rule of *Kell* because the appellees' trimming exceeded that necessary to maintain the power company's lines. On the other hand, the appellees and the circuit court maintain that Monongahela has the sole right to determine what is necessary to maintain its power lines and that *Kell* does not apply to tree trimming and removal. Given the principles that *Kell* is predicated upon, we find that the circuit court erred in holding that as a matter of law, the appellees were not subject to the reasonableness rule of *Kell.* The appellees' right is limited to the removal of that which endangers the safety, or interferes with the use of the power company's lines on the right-of-way and any removal must be done "in a reasonable manner, with due regard to the rights of all the parties." *Kell*, 170 W.Va. at 20, 289 S.E.2d at 457, *quoting, Stirling v. Dixie Electric*

*Membership Corp.*, 344 So.2d 427, 429 (La. App.1977). "The power company's rights are not, however, unlimited. The power company must not inflict unnecessary damage to the land nor may its exercise of its rights unreasonably increase the burden placed on the servient tenement." *Kell*, 170 W.Va. at 17, 289 S.E.2d at 454.

◾ In this case, we find that there is a genuine question of material fact concerning whether the appellees unreasonably increased the burden on the Larews' property when they exercised their rights under the easement and whether the appellees limited the trimming to that necessary to assure the safety and continued use of the power company's lines. Based on our finding that a genuine issue of material fact exists in this case, we find that the circuit court erred in granting the appellees summary judgment.

For the above-stated reasons, we reverse the decision of the Circuit Court of Preston County and remand for further proceedings consistent with this opinion.

Reversed and Remanded.

damage on the land. *Otter Tail Power Co. [v. Malme]*, n. 13, supra. [92 N.W.2d 514 (N.D. 1958)] Similarly, it has been held that a power company, in exercising its right to enter upon the land to maintain or repair its equipment, may not unreasonably increase the burden placed upon the servient tenement. *Martin v.*

*Norris Public Power Dist.*, 175 Neb. 815, 124 N.W.2d 221 (1963). It was decided very early that this right of entry included the right to enter upon the land to cut or trim trees or limbs which might be a danger to the power lines. (footnotes omitted).