# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1186

_____

**FILED**

**February 6, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

AMERICAN STATES INSURANCE COMPANY,
Defendant Below, Petitioner

V.

BARBARA SURBAUGH, ADMINISTRATOR
OF THE ESTATE OF GERALD KIRCHNER,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Greenbrier County
Honorable J.C. Pomponio, Jr., Judge
Civil Action No. 97-C-241

**REVERSED AND REMANDED**

_____

Submitted: January 15, 2013
Filed:  February 6, 2013

Avrum Levicoff
Julie A. Brennan
Levicoff, Silko & Deemer, P.C.
Pittsburgh, Pennsylvania
Attorneys for Petitioner

Barry L. Bruce
Barry L. Bruce and Associates, L.C.
Lewisburg, West Virginia
Attorney for Respondent

JUSTICE DAVIS delivered the Opinion of the Court.

CHIEF JUSTICE BENJAMIN and JUSTICE KETCHUM concur and reserve the right
to file concurring opinions.

**SYLLABUS BY THE COURT**

1. "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syllabus point 1, *Tennant v. Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002).

2. "An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." Syllabus point 10, *National Mutual Insurance Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by*, *Potesta v. United States Fidelity & Guaranty Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998).

3. As a general rule, the issue of whether an insurer has brought a policy exclusion to the attention of an insured is to be resolved by the trial court.

4. "A party to a contract has a duty to read the instrument." Syllabus point 5, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled*

i

*on other grounds by National Mutual Insurance Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987).

**Davis, Justice:**

American States Insurance Company ("American States"), defendant below, appeals from an adverse jury verdict in an insurance coverage declaratory judgment action brought by Barbara Surbaugh ("Ms. Surbaugh"),[1] plaintiff below. Before this Court, American States contends that the circuit court erred in submitting the insurance coverage issue to a jury as a matter of law and erred in denying its motion for summary judgment.[2] After a careful review of the briefs and record on appeal, and listening to the arguments of the parties, we reverse and remand.

## I.

## FACTUAL AND PROCEDURAL HISTORY

This case began on or about June 6, 1997, when Gerald Kirchner was accidentally shot and killed by Robbie Bragg. At the time of the shooting, Mr. Kirchner and Mr. Bragg were both employees of Grimmett Enterprises, a sporting goods store located in Rainelle, West Virginia. Grimmett Enterprises was owned by David Grimmett ("Mr. Grimmett"). Mr. Kirchner was shot accidentally while Mr. Bragg was showing a customer how to load a handgun that was for sale in the store.

---

[1]Ms. Surbaugh filed the action as Administrator of the estate of Gerald Kirchner.

[2]American States' brief actually sets out six assignments of error. However, we have reduced the issues down to two dispositive matters. In addition, Ms. Surbaugh assigned three issues as cross-assignments of error.

On or about December 19, 1997, the mother of Mr. Kirchner, Ms. Surbaugh, filed a wrongful death action against Mr. Bragg and a workers' compensation deliberate intent cause of action against Grimmett Enterprises. In 2002, Mr. Bragg and Grimmett Enterprises entered into a settlement with Ms. Surbaugh. Under the terms of the settlement, Mr. Bragg and Grimmett Enterprises agreed to a judgment against them for $1.5 million. Ms. Surbaugh agreed to not execute the judgment against the defendants in exchange for the defendants assigning all claims they might have against their respective insurers for refusing to provide a defense and coverage.

In 2005, Ms. Surbaugh filed an amended complaint to assert a declaratory judgment action against Grimmett Enterprises' insurer, American States.[3] The amended complaint sought a determination of whether the insurance policy issued by American States to Grimmett Enterprises provided coverage for the claim against Grimmett Enterprises.[4] By order entered April 19, 2010, the circuit court bifurcated the declaratory judgment action from the underlying wrongful death/deliberate intent action. Subsequently, on or about July

---

[3]A prior amended complaint was filed against Mr. Bragg's homeowners insurer. That action was settled.

[4]Even though an agreed judgment was entered against Grimmett Enterprises, the circuit court held that the judgment was not binding on American States. *See* Syl. pt. 7, in part, *Horkulic v. Galloway*, 222 W. Va. 450, 665 S.E.2d 284 (2008) ("A consent or confessed judgment against an insured party is not binding on that party's insurer in subsequent litigation against the insurer where the insurer was not a party to the proceeding in which the consent or confessed judgment was entered, unless the insurer expressly agreed to be bound by the judgment").

20, 2010, Ms. Surbaugh filed a motion for summary judgment on the declaratory judgment claim.[5] American States filed a cross motion for summary judgment. Ms. Surbaugh argued that an employee exclusion in the policy was ambiguous, was not conspicuous, and had not been brought to the attention of Mr. Grimmett.[6] American States argued that the policy was unambiguous and conspicuous. The record reflects that the circuit court entered an order on September 24, 2010, denying, in part, Ms. Surbaugh's motion.[7] The order made two dispositive rulings. First, the circuit court held as a matter of law that the exclusionary language contained in the policy was not ambiguous. Second, the court ruled that the issue of whether the exclusion was disclosed to Mr. Grimmett was to be resolved by a jury.

Ms. Surbaugh filed a renewed motion for summary judgment on May 4, 2011. In response, American States filed a renewed cross motion for summary judgment. American States argued that it was entitled to summary judgment because of the court's earlier ruling

---

[5]American States previously had filed a motion for summary judgment on the declaratory judgment claim before that claim and the wrongful death/deliberate intent actions were bifurcated. The trial court denied the motion by order entered June 14, 2007.

[6]The policy did not provide coverage for a bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured." Greater details about the policy and its purchase are brought out in the "Discussion" section of this opinion. *See* Section II, *infra*.

[7]The record does not contain an order specifically addressing American States' cross motion for summary judgment.

that the exclusion was unambiguous. By order entered June 17, 2011, the circuit court denied both summary judgment motions.

On June 23, 2011, a jury trial was held to determine coverage under the policy. The only witness called during the trial was Mr. Grimmett. At the conclusion of the evidence, the case was submitted to the jury with a special verdict form that had only one question: "Was the exclusionary language at issue in this case brought to the attention of the insured, Grimmett Enterprises, Inc."[8] On June 24, 2011, the jury returned a verdict answering the question in the negative. The circuit court thereafter, on June 30, 2011, entered a final order concluding that, based upon the jury's answer to the special verdict question, the employee policy exclusion was unenforceable. This appeal followed.

## II.

## STANDARD OF REVIEW

This is an appeal from a jury verdict in a declaratory judgment action. In addition to appealing the jury verdict, American States also has assigned error to the trial court's denial of its motions for summary judgment. With respect to a jury verdict in a declaratory judgment proceeding, we have held,

---

[8]*See* W. Va. R. Civ. Pro. 49(a) (special verdicts).

4

[t]his Court reviews a circuit court's entry of a declaratory judgment *de novo*, because the principal purpose of a declaratory judgment action is to resolve legal questions. . . . Any determinations of fact made by the circuit court or jury in reaching its ultimate judgment are reviewed under a clearly erroneous standard.

*Joslin v. Mitchell*, 213 W. Va. 771, 775, 584 S.E.2d 913, 917 (2003).

This Court's standard of review concerning summary judgment is well-settled. Upon appeal, "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting our *de novo* review, we are mindful that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). In other words, "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*, 192 W. Va. 189, 451 S.E.2d 755.

With these standards of review in mind, we address the dispositive issues presented.

5

## DISCUSSION

In this case, we are presented with two dispositive issues. First, we must determine whether the trial court was correct in finding, as a matter of law, that a jury had to decide if an insurance policy's exclusionary language was adequately brought to the attention of Mr. Grimmett. Second, we must decide whether the trial court erred in denying summary judgment in favor of American States. We will address both issues separately.

### A. Ordinarily the Trial Court Should Decide Whether a Policy's Exclusionary Language Was Brought to the Attention of an Insured

The trial court determined that it was for the jury to decide whether the exclusionary language at issue in this case was brought to the attention of Mr. Grimmett. American States argued below, and in this appeal, that this issue was for the trial court and not a jury.[9] We agree with American States.

We previously have held that "when a declaratory judgment proceeding involves the determination of an issue of fact, that issue may be tried and determined by a judge or jury in the same manner as issues of fact are tried and determined in other civil actions." *Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza*, 210 W. Va. 63, 66, 553 S.E.2d

_____

[9]As an alternative argument, American States also wrongly contended below, and in this appeal, that our cases did not require proof of disclosure.

257, 260 (2001). Our declaratory judgment act provides that, "'[w]hen a proceeding under this article involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.' W. Va. Code § 55-13-9 (1941)." Syl. pt 15, *Mountain Lodge Ass'n v. Crum & Forster Indem. Co.*, 210 W. Va. 536, 558 S.E.2d 336 (2001). Moreover, in Syllabus point 16 of *Mountain Lodge* we held that

> West Virginia Code § 55-13-9 and Rules 38, 39 and 57 of the West Virginia Rules of Civil Procedure, read and considered together, operate to guarantee that any issue triable by a jury as a matter of right in other civil actions cognizable by the circuit courts shall, upon timely demand in a declaratory judgment proceeding, be tried to a jury. As to other issues, Rule 39 of the Rules of Civil Procedure expressly authorizes trial by the court, with or without an advisory jury.

*Id*.

It is clear from the above authorities that issues of fact, that are normally tried by a jury, may be submitted to a jury in a declaratory judgment action. However, in the context of a declaratory judgment action to determine insurance coverage, generally the issues presented are for the trial court to decide. This Court has held that "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. pt. 1, *Tennant v. Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002). *See also* Syl. pt. 2, in part, *Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999) ("The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination[.]."). In *Payne v. Weston*, 195 W. Va. 502,

7

466 S.E.2d 161 (1995). Justice Cleckley addressed the parameters for invoking a jury trial

on an insurance coverage issue:

> In West Virginia, insurance policies are controlled by the rules of construction that are applicable to contracts generally. . . .
>
> Only if the court makes the determination that the contract cannot be given a certain and definite legal meaning, and is therefore ambiguous, can a question of fact be submitted to the jury as to the meaning of the contract. It is only when the document has been found to be ambiguous that the determination of intent through extrinsic evidence become [sic] a question of fact. Where a provision of an insurance policy is ambiguous, it is construed against the drafter, especially when dealing with exceptions and words of limitation.
>
> However, a court should read policy provisions to avoid ambiguities and not torture the language to create them. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue.

*Payne*, 195 W. Va. at 507, 466 S.E.2d at 166 (citations and internal quotations omitted). *See*

*also State ex rel. Piper v. Sanders*, 228 W. Va. 792, 794, 724 S.E.2d 763, 765 (2012) ("The

circuit court conducted a jury trial on the declaratory judgment action . . . , in which the jury

found that the State Farm umbrella policy provides liability coverage[.]"); *Mountain Lodge*

*Ass'n v. Crum & Forster Indem. Co.*, 210 W. Va. 536, 558 S.E.2d 336 (2001) (holding that

genuine issue of material fact as to whether owner, acting as its own general contractor,

retained the right to exercise control of its construction manager precluded summary

judgment for insurer); *West Virginia Ins. Co. v. Lambert*, 193 W. Va. 681, 682, 458 S.E.2d

774, 775 (1995) ("The jury also determined insurance coverage was available because Mr. Lambert's actions did not fall under the 'business pursuits' exclusion of his policy."); *Marson Coal Co., Inc. v. Insurance Co. of State of Pennsylvania*, 158 W. Va. 146, 148, 210 S.E.2d 747, 749 (1974) ("The insurance company denied coverage under the policy and the plaintiff, thereafter, instituted a declaratory judgment action. The case was tried to the court without a jury, and upon the trial court's findings of fact and conclusions of law, coverage under the policy was denied."); *Spencer v. Travelers Ins. Co.*, 148 W. Va. 111, 114, 133 S.E.2d 735, 738 (1963) ("All of the evidence relative to the conversations between the [parties] relative to the coverage in the insurance policy was objected to by the defendant as a violation of the parol evidence rule, but was admitted by the trial court for the consideration of the jury."); Syl. pt. 1, *Runner v. Calvert Fire Ins. Co.*, 138 W. Va. 369, 76 S.E.2d 244 (1953) ("Where, under the facts and circumstances of a particular case, the court cannot, as a matter of law, hold that the specific provisions of an insurance contract have been breached, the question is one for jury determination.").

In the instant case, the trial court determined that, based upon the per curiam opinion in *Luikart v. Valley Brook Concrete & Supply, Inc.*, 216 W. Va. 748, 613 S.E.2d 896 (2005), a jury was required to determine whether the exclusionary language at issue in the case was brought to the attention of Mr. Grimmett. Simply put, *Luikart* does not support the trial court's ruling as to the necessity of a jury trial.

9

The plaintiff in *Luikart* was the father and administrator of the estate of Paul Travis Luikart, who was killed during the course of his employment. The plaintiff sued the employer for wrongful death under the workers' compensation statute. While the action was pending, the employer's insurer denied coverage and filed a declaratory judgment action to obtain a judicial ruling on the issue. After the two actions were consolidated, the employer entered into a settlement and an agreed judgment against it for $3 million. The plaintiff agreed to not execute the judgment against the employer in exchange for the employer assigning all claims it might have against its insurer for refusing to provide a defense and coverage. Eventually, the insurer moved for summary judgment on the declaratory judgment claim. The trial court granted summary judgment in favor of the insurer. The plaintiff appealed.

One of the issues presented in *Luikart* involved the application of language found in Syllabus point 10 of *National Mutual Insurance Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. United States Fidelity & Guaranty Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998). In *McMahon*, we held:

> An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and *must bring such provisions to the attention of the insured*.

Syl. pt. 10, *McMahon*, 177 W. Va. 734, 356 S.E.2d 488 (emphasis added.)

10

After we determined in *Luikart* that the language of the insurance contract was unambiguous and conspicuous, we addressed the plaintiff's contention that the exclusionary language was not brought to the attention of the employer. In addressing this issue, we examined the deposition testimony of the employer's president, who testified that he read some of the policy but not everything. In addition to reviewing the president's deposition, we reviewed the policy:

> Moreover, the policy's coverage section clearly stated that it was subject to various exclusions. The portion of the insurance policy titled "Commercial General Liability Coverage Form," which contains the relevant exclusionary language, cautions in its first sentence that "[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered."

*Luikart*, 216 W. Va. at 754, 613 S.E.2d at 902. In view of this evidence, we held that the insurer "sufficiently disclosed the exclusions to Valley Brook." *Luikart*, 216 W. Va. at 754, 613 S.E.2d at 902.

It is clear to this Court that *Luikart's* application of Syllabus point 10 of *McMahon*, that an insurer bring exclusionary language to the attention of an insured, did not remotely suggest that this was a mandatory jury question. In fact, we wish to make clear, and so hold, that, as a general rule, the issue of whether an insurer has brought a policy exclusion to the attention of an insured is to be resolved by the trial court.

11

Our holding is consistent with the procedural way in which a federal district court in *Canal Insurance Co. v. Sherman*, 430 F. Supp. 2d 478 (E.D. Pa. 2006), addressed the issue. *Sherman* was a diversity jurisdiction case that applied West Virginia insurance law to a policy coverage issue. One of the issues addressed by *Sherman* was the parties' cross motions for summary judgment on the issue of whether the insurer brought policy exclusions to the attention of the insured. After rejecting the insurer's evidence that the exclusions were brought to the attention of the insured, the court held that the insurer's "motion for summary judgment that the exclusions bar coverage will be denied." *Sherman*, 430 F. Supp. 2d at 488. In turning to the insured's cross motion for summary judgment, the court held that the insured

> has shown there is no genuine issue of material fact that the policy was not explained to him and Canal has failed to raise such an issue. Under West Virginia law, failure to explain the exclusion to the insured prevents the application of that exclusion. Therefore, Sherman is entitled to judgment as a matter of law.

*Sherman*, 430 F. Supp. 2d at 489. Although we may not agree with the district court's substantive resolution of the disclosure issue in *Sherman*, we find that the district court correctly concluded that the resolution of the issue was for the court and not a jury.

Consequently, and in conjunction with the discussion that follows, we find that the trial court committed error in having a jury decide whether the insurance policy's exclusionary language adequately was brought to the attention of Mr. Grimmett.

12

### B. Summary Judgment

The parties filed several summary judgment motions in this case. In our review of the issue on appeal, we will rely on the record submitted for all of the summary judgment motions, as well as the arguments set out in this appeal.

With respect to general principles involved with examining provisions of an insurance policy, this Court has indicated that "[w]hen an insurance company seeks to avoid its duty to defend, or its duty to provide coverage, through the operation of a policy exclusion, the insurance company bears the burden of proving the facts necessary to trigger the operation of that exclusion." *State Auto. Mut. Ins. Co. v. Alpha Eng'g Servs., Inc*., 208 W. Va. 713, 716, 542 S.E.2d 876, 879 (2000) (citation omitted). "Language in an insurance policy should be given its plain, ordinary meaning." Syl. pt 1, *Soliva v. Shand, Morahan & Co., Inc*., 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co.*, 153 W. Va. 813, 172 S.E.2d 714 (1970). As we previously indicated,

> "[a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other

13

policy terms, and must bring such provisions to the attention of the insured. Syl. pt. 10, *McMahon*, 177 W. Va. 734, 356 S.E.2d 488. The dispositive summary judgment issues that were before the trial court involved a determination of whether the policy exclusion for employee injuries was (1) unambiguous, (2) conspicuous, and (3) disclosed to the insured. We will examine each issue separately.

**1. The exclusion was unambiguous.** The policy involved in this case is a standard commercial liability policy. The policy contained an exclusion purporting to deny coverage to an employee injured during the course of his or her employment. The circuit court found that the exclusion was not ambiguous. This Court has explained that "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. pt. 1, *Prete v. Merchants Prop. Ins. Co.*, 159 W. Va. 508, 223 S.E.2d 441 (1976). However, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 1, *Berkeley Cnty. Pub. Serv. Dist. v. Vitro Corp*. of America, 152 W. Va. 252, 162 S.E.2d 189 (1968). In the instant case the language of the policy exclusion was set out as follows:

**B. EXCLUSIONS**

**1. Applicable to Business Liability Coverage** –

This Insurance does not apply to:

14

. . . .

e. "Bodily injury" to:

(1) An employee of the insured arising out of and in the course of employment by the insured; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

This exclusion applies:

(a) Whether the insured may be liable as an employer or in any other capacity; and

(b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

In Ms. Surbaugh's motion for summary judgment on July 20, 2010, she argued that this exclusion was ambiguous. Ms. Surbaugh contended that the exclusion could be read to mean that the employer had to cause the injury. To support this assertion, Ms. Surbaugh submitted an affidavit by Mr. Grimmett, in which he stated that when he read the exclusion after the accident, he thought that it meant that he, as the employer, had to cause the injury. Ms. Surbaugh also presented deposition testimony of a linguistics expert, who opined that the exclusion was ambiguous.

The circuit court rejected Ms. Surbaugh's argument that the exclusion was ambiguous. The circuit court's order addressed the issue as follows:

15

This Court rules as a matter of law that the policy language is not ambiguous. In fact, the exact same language was used in insurance policies in question[s] in at least two West Virginia cases: *Spencer v. Travelers Ins. Co.*, 148 W. Va. 111, 115, 133 S.E.2d 735, 738 (1963) and *Smith v. Animal Urgent Care, Inc.*, 208 W. Va. 664, 666, 542 S.E.2d 827, 829 (2000). The language in the current case and the two cases just cited are exactly similar and state that excluded from coverage is bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured." Because the language in the current case and in *Spencer* and *Smith* are exactly the same, and the West Virginia Supreme Court of Appeals never indicated that the language in either *Spencer* or *Smith* was at all ambiguous, this Court rules that as a matter of law the language in the current case is similarly not ambiguous.

We agree with the circuit court that the language of the exclusion in this case is not new to this Court. *See Luikart*, 216 W. Va. at 751, 613 S.E.2d at 899 (similar exclusion); *Trent v. Cook*, 198 W. Va. 601, 608 n.13, 482 S.E.2d 218, 225 n.13 (1996), *overruled on other grounds by Gibson v. Northfield Ins. Co.*, 219 W. Va. 40, 631 S.E.2d 598 (2005) (similar exclusion). Moreover, this same policy language has been found to be unambiguous by other courts. *See Aetna Cas. & Sur. Co. v. Beautiful Signs, Inc.*, 496 N.E.2d 1229, 1230 (Ill. App. Ct. 1986) ("The exclusion in question states that coverage will not apply 'to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured. . .'. . The exclusion in question was designed to preclude coverage in those areas normally covered by Worker's Compensation insurance."); *Franklin v. J. A. Jones Constr. Co.*, 391 So. 2d 1321, 1323 (La. Ct. App. 1980) ("[W]e hold that the

16

terms of the policy are clear and unambiguous."); *United States Fid, &Guar. Co. v. Rosso*, 521 A.2d 301, 304 (Me. 1987) ("We find the language of the exclusion clause in Rosso's insurance policy to be unambiguous. It clearly applies to 'any employee of the insured arising out of and in the course of employment by the insured.' Therefore, we construe this language according to its plain meaning."); *State v. Schenectady Hardware & Elec. Co., Inc.*, 636 N.Y.S.2d 861, 863 (N.Y. App. Div. 1996) ("The exclusionary language in the CGL policy is clear and unambiguous and renders the coverage inapplicable to 'bodily injury to any employee of the insured arising out of and in the course of his employment by the insured[.]'"); *Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co.*, 477 S.E.2d 59, 67 (N.C. App. 1996) ("This coverage was explicitly stated to be inapplicable 'to bodily injury to any employee of the insured arising out of and in the course of employment by the insured. . . .'"). Consequently we conclude that the language of the exclusion is not ambiguous as a matter of law. Under the policy, an injury to an employee arising out of and in the course of employment is excluded from coverage.

**2. The exclusion was conspicuous.** The circuit court determined that the exclusion was conspicuous, plain, and clear.[10] We already have pointed out that an insurance

---

[10]American States refers this Court to two summary judgment orders as indicating the trial court found the exclusion was conspicuous. No language in those orders makes such a ruling. However, it is clear from the trial transcript that the trial court made a pretrial ruling that the exclusion was conspicuous.

17

policy "must make exclusionary clauses conspicuous, plain, and clear[.]" *West Virginia Employers' Mut. Ins. Co. v. Summit Point Raceway Assocs., Inc.*, 228 W. Va. 360, 373, 719 S.E.2d 830, 843 (2011) (internal quotations and citations omitted). Furthermore, this Court has emphasized that "any type of exclusion . . . must be stated with such clarity and specificity so as to place an insured on notice as to its existence in the subject policy of insurance." *Bender v. Glendenning*, 219 W. Va. 174, 181, 632 S.E.2d 330, 337 (2006) (per curiam).

Ms. Surbaugh contended below that the exclusion was not conspicuous because the policy did not contain a table of contents.[11]  We find no merit to this argument. In no decision of this Court have we ever held that insurance policies must have a table of contents for exclusions to be found to be conspicuous. While it is true that a few of the insurance policy cases presented to this Court have had a table of contents, we have not made this an absolute requirement. *See Luikart*, 216 W. Va. at 753, 613 S.E.2d at 901 (policy had table of contents); *Farm Family Mut. Ins. Co. v. Bobo*, 199 W. Va. 598, 603, 486 S.E.2d 582, 587 (1997) (same). Obviously, a table of contents would be helpful in understanding any insurance policy, but such helpfulness has not been mandated by this Court, nor has Ms. Surbaugh pointed to any statute or regulation requiring the same.

---

[11]It was also argued that "the exclusionary language was not plain and clear in describing what it was excluding." We have already rejected this argument in determining that the exclusion was not ambiguous.

18

The exclusion in the policy is found in the "Businessowners Liability Coverage Form." The relevant exclusion in this case is found on page two of this policy Form. The policy sets out the exclusion section in bold, capital letters that use a larger font size than the substantive material. The employee exclusion is the fifth exclusion on the page. As we observed in *Luikart*, "[i]n the present case, the exclusionary language was set apart from the other language by an emboldened subheading entitled 'Exclusions.' Therefore, the only conclusion that can be reached by the use of the boldface language is that it was, indeed, conspicuous." *Luikart*, 216 W. Va. at 753, 613 S.E.2d at 901. In sum, we find the exclusion in this case was conspicuous.

**3. The exclusion was disclosed to the insured.** American States argued below that, once the policy was found to be unambiguous and conspicuous, the analysis ended, and the exclusion had to be enforced. Alternatively, American States argued that if there was an additional requirement of showing that the exclusion was disclosed to the insured, the evidence supported that such disclosure had been made. The circuit court found that the issue of disclosure was an element set out in *McMahon* and applied to this case, that material issues of fact existed as to whether the exclusion had been disclosed to Mr. Grimmett.

19

We already have made clear that, under Syllabus point 10 of *McMahon,* an insurer seeking to invoke exclusions "must bring such provisions to the attention of the insured." *Webster Cnty. Solid Waste Auth. v. Brackenrich & Assocs., Inc.,* 217 W. Va. 304, 312, 617 S.E.2d 851, 859 (2005) (internal quotations and citations omitted). Although the issue of disclosure is part of the analysis in determining whether to enforce an exclusion, it is an element that is rarely invoked. In the vast majority of cases brought to this Court involving enforcement of exclusions under Syllabus point 10 of *McMahon*, the issue of disclosure was not raised by the insured. *See West Virginia Emp'rs' Mut. Ins. Co. v. Summit Point Raceway Assocs., Inc.*, 228 W. Va. 360, 719 S.E.2d 830 (2011) (resolving issues under Syllabus point 10 of *McMahon* but no direct issue raised concerning disclosure of exclusion); *Bender v. Glendenning*, 219 W. Va. 174, 632 S.E.2d 330 (2006) (per curiam) (same); *Webster Cnty. Solid Waste Auth. v. Brackenrich & Assocs., Inc.*, 217 W. Va. 304, 617 S.E.2d 851 (2005) (same); *Satterfield v. Erie Ins. Prop. & Cas.*, 217 W. Va. 474, 618 S.E.2d 483 (2005) (same); *Wehner v. Weinstein*, 216 W. Va. 309, 607 S.E.2d 415 (2004) (same); *Russell v. Bush & Burchett, Inc.*, 210 W. Va. 699, 559 S.E.2d 36 (2001) (same); *Marcum Trucking Co., Inc. v. United States Fid. & Guar. Co.*, 190 W. Va. 267, 438 S.E.2d 59 (1993) (same). *But see New Hampshire Ins. Co. v. RRK, Inc.*, ___ W. Va. ___, ___ S.E.2d ___, No. 11-1099 Nov. 2012) (per curiam) (raising disclosure issue); *Luikart v. Valley Brook Concrete & Supply, Inc.*, 216 W. Va. 748, 613 S.E.2d 896 (2005) (same). The reason for the rarity of this issue is probably because it is an element that is difficult to sustain. The arguments made

20

by Ms. Surbaugh illustrate the difficulty in establishing disclosure as a genuine issue in dispute.

The evidence shows that, at some point in 1995, Mr. Grimmett opened a sporting goods store. The owner of the building where the store was going to be located informed Mr. Grimmett that he would have to obtain insurance. Mr. Grimmett contacted a New York agent of American States and made arrangements by phone to purchase a policy. Mr. Grimmett received the first policy in October 1995. The policy subsequently was renewed for the period October 1996 to October 1997. The shooting accident occurred during the second year of the policy.

Ms. Surbaugh raised the issue of failure to disclose by arguing below that Mr. Grimmett was never verbally told about the exclusions, that the initial application for insurance did not contain any exclusions, and that the initial quote for coverage did not disclose any exclusions. In light of this evidence, Ms. Surbaugh contends American States failed to bring the exclusions to the attention of Mr. Grimmett.

American States argues that the cover letter of the first policy informed Mr. Grimmett of the following:

> Please read your policy carefully. In the event of a loss your insurance coverage will be controlled by the terms,

21

conditions and exclusions of your policy. After your review, please call us should you find you require further explanation regarding any part of your policy or if you wish to make any changes or corrections.

In addition, American States points out that at the top of the policy the following appears:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Finally, American States notes that Mr. Grimmett admitted to reading the cover letter, but not the policy. In the affidavit submitted by Mr. Grimmett, as an exhibit along with Ms. Surbaugh's first motion for summary judgment on the policy, he stated the following:

10. After the accident on June 6, 1997, I reviewed my insurance policy and for the first time read the exclusions on employee bodily injury, Section 2.e. After reading the exclusion, I read it to mean that bodily injury to an employee was not covered if I injured the employee. I believed that I had coverage for this accident because I did not cause the injury to the employee.

Ms. Surbaugh contends that the fact that Mr. Grimmett did not read the policy until after the accident is not dispositive. Ms. Surbaugh argues that our decision in *Mitchell v. Broadnax*, 208 W. Va. 36, 49, 537 S.E.2d 882, 895 (2000), *superseded by statute as recognized by Findley v. State Farm Mutual Automobile Insurance Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002), outlines the requirements for bringing an exclusion to the attention of a policyholder. This Court noted in footnote 24 of *Mitchell* the following:

22

Methods by which insurers may effectively communicate an exclusion to an insured to secure his/her awareness thereof may include, but are not necessarily limited to, reference to the exclusion and corresponding premium adjustment on the policy's declarations page or procurement of the insured's signature on a separate waiver signifying that he/she has read and understood the coverage limitation.

*Mitchell*, 208 W. Va. at 49 n.24, 537 S.E.2d at 895 n.24. The dicta in footnote 24 of *Mitchell* by its express terms did not provide exhaustive examples of how an insurer may bring policy exclusions to the attention of an insured.[12] Moreover, the true intent of the limited examples provided in the footnote can be found in the body of the opinion. After resolving the dispositive policy issues in *Mitchell*, the opinion continued in dicta as follows:

Before concluding our discussion herein, we would like to take this opportunity to speak on a matter that has troubled us during our decision of this case. . . .

. . . .

. . . [T]he Legislature has vested the Commissioner with sufficient authority to reject policy provisions which do not clearly and accurately inform the insured as to the coverage provided by such policy.

Despite the Commissioner's regulatory powers, we are mindful, from the policy language at issue in this case, that two marginally viable practices continue to accompany the incorporation of insurance policy exclusions. First, we observe

---

[12]We have pointed out that "language in a footnote generally should be considered obiter dicta which, by definition, is language unnecessary to the decision in the case and therefore not precedential." *State ex rel. Medical Assurance of West Virginia, Inc. v. Recht*, 213 W. Va. 457, 471, 583 S.E.2d 80, 94 (2003) (internal quotations and citation omitted).

that the "owned but not insured" exclusion in this case, though it was clearly designated as a limitation of the available UM coverage, most likely would not have been apparent to the majority of insurance consumers given its less-than-prominent placement in the appropriate policy endorsement. . . . Therefore, we urge the Commissioner to review proffered policies of insurance to ensure that coverage exclusions are not so incognito as to be deceptive or misleading as to the true scope of coverage available to the insured.

*Mitchell*, 208 W. Va. at 48-49, 537 S.E.2d at 894-95. In the final analysis, the dicta of

footnote 24 in *Mitchell* was merely pointing out examples of how "deceptive or misleading"

exclusions could be brought to the attention of policyholders.

In the instant proceeding, there is nothing "deceptive or misleading" in the

plain and unambiguous exclusions in the policy. Consequently, there is no basis to suggest

that American States had to do more than demonstrate that it communicated in writing to Mr.

Grimmett that he should read the policy and its exclusions and contact American States if he

had concerns.[13] Had Mr. Grimmett read the policy, as he was told to do in a letter and on the

policy itself, he would have learned of the exclusions and could have contacted American

_____

[13]We would note that our recent decision in *New Hampshire Ins. Co. v. RRK, Inc.*, ___ W. Va. ___, ___ S.E.2d ___, No. 11-1099 Nov. 9. 2012) is distinguishable from the facts of the instant case. In *RRK* the insured was sent a 17-page fax of the policy coverage forms. The coverage form included exclusions, but did not include the exclusion at issue in the case. The insured read the coverage forms. However, the insured did not read the actual policy when it was sent, allegedly because he believed it was consistent with the policy coverage forms. The instant case does not involve a conflict between a draft of the policy coverage forms and the policy itself.

States with any questions he had regarding said exclusions.  In other words, American States

fulfilled its obligation to bring the exclusion to the attention of Mr. Grimmett, but Mr.

Grimmett failed to carry out his duty to read the policy.  The law of this State is clear in

holding that "[a] party to a contract has a duty to read the instrument."  Syl. pt. 5, *Soliva v.*

*Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled on other*

*grounds by National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d

488 (1987).[14] As pointed out by a California appellate court:

> Failing to read a policy . . . is not sufficient reason to hold
> a clear and conspicuous policy provision unenforceable.  To
> hold otherwise would turn both contract and insurance law on its
> head.  Insurers are not required to sit beside a policy holder and
> force them to read (and ask if they understand) every provision
> in an insurance policy.

*Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*, 128 Cal. Rptr. 3d 330, 338

(2011).  *See also Blankenship v. City of Charleston*, 223 W. Va. 822, 827, 679 S.E.2d 654,

659 (2009) ("[A]n equally important provision of the general policy is the cautionary

introductory statement that '[v]arious provisions in this policy restrict coverage [and one has

to] [r]ead the entire policy carefully to determine rights, duties and what is not covered.'");

---

[14]Although dicta appears in footnote 6 of *McMahon* that might suggest an insured does not have a duty to read a policy, the opinion does not stand for such an abhorrent proposition.  As indicated in *Luikart*, the dicta in *McMahon* merely relaxed the duty to read in the limited context of an ambiguous contract and the application of the doctrine of reasonable expectations.  *See Luikart*, 216 W. Va. at 755, 613 S.E.2d at 903 ("The application of the doctrine of reasonable expectations has resulted in a relaxation of our earlier-stated rule that a party to a contract has a duty to read the instrument.").

*Luikart*, 216 W. Va. at 754, 613 S.E.2d at 902 ("The portion of the insurance policy titled 'Commercial General Liability Coverage Form,' which contains the relevant exclusionary language, cautions in its first sentence that '[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.' Accordingly, we conclude that Motorists sufficiently disclosed the exclusions to Valley Brook."); *Moore v. United Benefit Life Ins. Co.*, 145 W. Va. 549, 564, 115 S.E.2d 311, 319 (1960) ("[T]he insured cannot escape the effect of the conditions of a policy on the ground of ignorance, due to failure to read his policy, it being his duty to examine it[.]").[15]

In sum, American States established at the summary judgment stage that no material issue of fact was in dispute as to the exclusion being unambiguous, conspicuous, and disclosed to Mr. Grimmett. Consequently, the circuit court should have entered summary judgment in favor of American States and declared the exclusion enforceable.

---

[15]We summarily reject Ms. Surbaugh's three cross-assignments of error. Ms. Surbaugh contends that the exclusions should not be enforced because the policy was not signed by a West Virginia resident agent for American States, as was once required by W. Va. Code § 33-12-11 (the requirement was repealed in 2004). *See* W. Va. Code § 33-12-11 (2004) (Repl. Vol. 2011). The circuit court rejected this argument, and so do we. Assuming that we would find the former version of W. Va. Code § 33-12-11 constitutionally valid, the appropriate remedy would be to invalidate the policy and not, as Ms. Surbaugh contends, invalidate only the exclusions. Ms. Surbaugh's other cross-assignments of error, whether the policy was for $1 million or $2 million and the trial court's refusal to give a reasonable expectation of coverage instruction, are rendered moot by our decision.

**IV.**

**CONCLUSION**

In view of the foregoing, the circuit court's order of June 30, 2011, which entered judgment in favor of Ms. Surbaugh based upon a jury verdict, is reversed. This case is remanded with instructions that the circuit court enter summary judgment in favor of American States in the bifurcated declaratory judgment part of the action.

Reversed and Remanded.