SER U-Haul Company v. Zakaib, No. 13-0181

**FILED**

December 3, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, J., concurring:

In this proceeding, the petitioner sought a writ of prohibition to prevent enforcement of a circuit court order that denied the petitioner's motion to compel arbitration. Justice Davis, writing for the majority, has denied the writ after determining that an arbitration agreement was not part of the contracts between the petitioner and the respondents. I concur with all of the majority's reasoning and concur in the judgment. I write separately, however, to address the dissent's position that the contracts fairly incorporated an arbitration provision because of the parties' "course of dealing" within Article 2A of the Uniform Commercial Code, West Virginia Code §§ 46-2A-101 to -532.

To begin, it should be noted that neither the parties nor the circuit court addressed "course of dealing." The dissent raises this issue *sua sponte*, in the absence of a record properly developed for resolution of a "course of dealing" claim.

The UCC sets out a concise definition of the phrase "course of dealing" in West Virginia Code § 46-1-303(b):

> A "course of dealing" is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and

1

other conduct.

This definition is further explained in West Virginia Code § 46-1-303(d), which provides, in relevant part:

> A ... course of dealing between the parties ... is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement.

Finally, a legislatively approved limitation upon the phrase "course of dealing" is set out in the Official Comment for the statute as follows:

> 2. "Course of dealing," as defined in subsection (b), is restricted, literally, to a sequence of conduct between the parties previous to the agreement. A sequence of conduct after or under the agreement, however, is a "course of performance."

W. Va. Code § 46-1-303, Official Comment No. 2 (emphasis supplied).

As is readily apparent from an examination of these provisions, the UCC allows the introduction of evidence of pre-contract "course of dealing" between the parties in order to avoid application of the parol evidence rule in a situation where there is an ambiguity in a term of the contract.[1]

_____

[1]"The parol evidence rule ... generally prohibits the introduction of any extrinsic evidence to vary or contradict the terms of written contracts[.]" *Larew v. Monongahela Power Co.*, 199 W.Va. 690, 694, 487 S.E.2d 348, 352 (1997); *see* Syl. Pt. 1, *Kanawha Banking and Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947) ("Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality,

2

[The UCC] makes admissible evidence of course of dealing ... to explain or supplement the terms of any writing stating the agreement of the parties in order that the true understanding of the parties as to the agreement may be reached. Such writings are to be read on the assumption that the course of prior dealings between the parties ... were taken for granted when the document was phrased. Unless carefully negated they have become an element of the meaning of the words used.

*Scovill Fasteners, Inc. v. Northern Metals, Inc.*, 692 S.E.2d 840, 843 (Ga. App. 2010); *see also Deerfield Commodities, Ltd. v. Nerco, Inc.*, 696 P.2d 1096, 1109 (Or. App. 1985) ("[The UCC] provides that the terms of a completely integrated document may be explained or supplemented by three different means: specifically, evidence of (1) a course of dealing, (2) a course of performance or (3) usage of the trade."); *Morgan v. Stokely-Van Camp, Inc.*, 663 P.2d 1384, 1389-1390 (Wash.App. 1983) ("[C]ourse of dealing is used most frequently to clarify or perhaps alter the meaning of terms used in a contract.").

The petitioner in this case did not argue that pre-contract conduct between the parties explained the respondents' understanding of any term in the contracts, because the contracts did not even mention the term – an arbitration clause – at issue in this lawsuit. "[A] course of dealing ... can only give meaning to and supplement or qualify *the terms of an agreement between the parties*." *Circle A Automotive Service, Inc. v. American Rentals, Inc.*, 2001 WL 195006, *1 n.1 (Conn. Super. 2001) (emphasis supplied). "In such instances, the evidence

---

fraud, duress, mistake or insufficiency of consideration.").

3

of a course of dealing that explains or supplements a contract is competent evidence of the parties' intent and can become a part of a contract." *L.F. Brands Marketing, Inc. v. Dillard's, Inc.*, 314 S.W.3d 736, 739 (Ark.App. 2009).

In short, the dissent is attempting to pound a square peg into a round hole with its "course of dealing" analysis. The fact that the petitioner's prior contracts with the respondents made no mention of an arbitration clause does not establish a "course of dealing" between the parties; rather, it establishes a consistent but unilateral course of conduct on the part of the petitioner in attempting to hide the arbitration clause from its customers. To accept the dissent's position to the contrary would be to elevate the adage, "fool me once, shame on you; fool me twice, shame on me," to the status of a legal principle.

The real bottom line of the dissent's analysis seems to be the dissenting justice's belief that the respondents knew or should have known about the arbitration clause, having received copies of the Addendum after signing their previous contracts. There are two flaws in this analysis, the first a matter of evidence and the second a matter of law.

First, the record indicates that after the respondents signed their contracts, they were handed a packet of materials that included copies of the Addendum – at the same time they were handed the car keys and were on the way outside to take possession of their vehicles.

4

There is no evidence to indicate they were told to review the contents of the packets before getting into the vehicles, and no evidence to indicate they were told that anything in the packets added additional provisions to the contracts they had just signed. On this record, no appellate court could conclude in the first instance[2] that the respondents had knowledge of the arbitration clause contained in the Addendum because they had received copies of the document after the fact, i.e., after they had signed their contracts and taken possession of their vehicles.

Second, and more fundamentally, I am unwilling to conclude as a matter of law, as the dissent does in cursory fashion, that once the respondents were given those packets they had a duty to read everything contained in them. This Court has held that "'[a] party to a contract has a duty to read the instrument.' Syllabus point 5, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mutual Insurance Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987)." Syl. Pt. 4, *American States Ins. Co. v. Surbaugh*, 231 W. Va. 288, 745 S.E.2d 179 (2013).[3]

_____

[2]Because "course of conduct" was not raised by the parties, the circuit court had no occasion to make specific findings of fact with respect to these critical facts.

[3]Ironically, the dissenting justice in this case concurred in *Surbaugh*, clarifying that one "cannot escape the effect of exclusions in an insurance policy due to failure to read the policy, when the exclusions are *clear, unambiguous and conspicuous*." 231 W. Va. at __, 745 S.E.2d at 191 (emphasis supplied). In the instant case, the arbitration provision at issue was not even contained in the contract; it was clearly, unambiguously and conspicuously *not there*.

But in this case the contract was completely silent with respect to arbitration; rather, the arbitration clause was contained in a separate document "hiding out" in a packet of unrelated information presented to the respondents *after* they had signed their contracts. I do not believe that the principle of *Soliva* and *Surbaugh* extends to this situation, and I do not believe that the issue can or should be decided in this case where the parties did not develop the record for this purpose.

Accordingly, I concur in the majority opinion.